## CLOFUS EASLEY v. THE STATE.

### No. 4656. Decided December 12, 1917.

**Robbery—Misconduct of Jury—Charge of Court—Insufficiency of the Evidence.**

Where, upon trial of robbery, by putting the injured party in fear of life or bodily injury, the defendant testified that he was charged with murder, and the jury discussed the charge of murder, and it appeared from the record, that he was not indicted therefor, but at the time of his trial was held therefor on complaint and was subsequently discharged, and the evidence failed to show an assault and only showed that he had a stick in his hand which was not described either as to its size, its weight or its length or the material from which it was made, and the evidence was very meager as to putting the injured party in fear of life or bodily injury, etc., the court thinks under all circumstances, that a new trial should have been granted. Following Turner v. State, 61 Texas Crim. Rep., 103.

Appeal from the District Court of Morris. Tried below before the Hon. J. A. Ward.

Appeal from a conviction of robbery; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

No brief on file for appellant.

*E. B. Hendricks,* Assistant Attorney General, for the State.

MORROW, JUDGE.—Conviction was for robbery, and punishment assessed at five years confinement in the State penitentiary.

The indictment charged the manner of the offense in the following language: "Did then and there unlawfully in and upon John Clark did make an assault and did then and there by said assault and by violence to the said John Clark, and by putting the said John Clark in fear of life and bodily injury"; and the case was submitted to the jury upon the issues thus alleged. It appears that the injured party, John Clark, was a white man and appellant a negro, both residing in

the same community. The offense was charged to have occurred on the 15th of November, 1916. The indictment was found April 12, 1917. Clark testified that he had known appellant nearly all his life; that one evening he, the witness, was drinking and that he went to a shack belonging to the brother of appellant at which there was a crowd of negroes and asked if he could get a bottle of whisky. He said: "I guess defendant saw my pocketbook here in town that night. I don't remember whether I exhibited my money to him or not. I gave him a dollar. I had my pocketbook out in front of him. After that I left town and started home. The next time I saw him was near Mr. Mason's, just inside the corporation. He came up behind me. He had a stick something like a walking stick in his hand. We just walked along together like I would with anybody; I never thought nothing until he walked upon me. We walked right on down the road together. We walked on together until we got by the side of Mr. Mason's house. Walked up to Mr. Mason's house, where the roads cross. Walked up to his back gate and I asked Clofus where he was going. He said: 'I am just going down the road a piece.' I said: 'You ain't got any business down the road, no negroes live down there,' and he said, 'I want your pocketbook.' I turned and looked him straight in the face and says, 'Clofus, what in the world do you mean?' I then ran my hand in my pocket and gave it to him. I said, 'If you don't leave me alone I will call Mr. Mason.' I gave him the pocketbook because he had a stick in his hand. He never raised it but I didn't want any trouble and I was afraid he would kill me if I didn't give it to him. I gave him the pocketbook through fear. If I hadn't been afraid he never would have got it. He told me the second time to give him my pocketbook. I don't remember how he had the stick in his hand." He further testified that this occurred about 10 or 11 o'clock at night after the stores in town were closed, and that there was a valley between where it occurred and his house. He also claimed to have bought a bottle of whisky from appellant at the time he gave him the dollar. The witness said that he did not know when this occurred, but that it was some time last year; that he didn't phone the officers because he did not want to and that he would not have his wife find it out for five times the amount. The appellant was not represented by attorney, but cross-examined the witness, and from the cross-examination the following quotations are taken: "You did not draw it (the stick) on me but you had it all right. I didn't think you would rob me and was certainly surprised when you did it. I will tell you exactly why I waited all this time before I indicted you. I never would have told it if the grand jury had not got me. That was on Saturday night. I don't know whether it was November 15th or not. I have nothing on earth by which I can fix the date exactly. I decided that under the circumstances I would not say anything about it and did not try to remember it." The pocketbook was worth 50 cents and contained $1 in money.

This is the entire incriminating evidence. The witness Clark said

that he had never mentioned the matter until about a month before the grand jury met when he learned that a negro had been killed or found dead and appellant had been arrested on suspicion of connection with the homicide; that he then told of the robbery and was afterward brought before the grand jury. Appellant's witnesses testified that he was sick and at home at the date of the alleged occurrence and appellant testifying denied that he sold the State's witness whisky, denied the robbery, and denied that he was at the place where appellant claimed to have gotten the whisky, and testified and introduced witnesses to show that he was not at the place where the State's witness testified to have gotton the whisky and exhibited his pocketbook. We quote the entire cross-examination of appellant: "Q. You are under indictment now for murder, ain't you—under a charge for murder? A. Yes, sir; I am accused of it." On motion for new trial it was charged that while the jury was deliberating, before they agreed on a verdict, and while two of the jurors were in favor of acquittal, it was stated and argued that appellant was under indictment for murder. Evidence was heard on the motion and the jurors testified. There was some conflict as to just what happened. Several of the jurors testified, in substance, as follows: The jury was tied up for twenty-four hours, two for acquittal and ten for conviction. Those for conviction argued that the defendant should be convicted for the reason that he was charged with murder in the other case and that if they gave him five years in this case and he was convicted in the other case he might get a shorter term. One of them, Wiley, stated that the jury in its retirement discussed the fact that appellant was under indictment for murder, but he would not say that any juror told him directly that he was indicted for murder but that it was talked of and that he believed from what he had heard the other jurors say that he was under such indictment. That he hung out for twenty-four hours for acquittal; that it was said in the jury room that the defendant was indicted for murder and that if they convicted him in this case it might make his sentence less in the other; but for this statement he would not have consented to the verdict; that it was his understanding that the grand jury was in session while the jury was deliberating.

The evidence that was given by appellant to the effect that he was charged with murder was not limited in the court's charge and no exception to his failure to do so was reserved. Appellant, as a matter of fact, was not indicted for murder, but at the time of his trial was held on complaint made on suspicion or belief that he was connected with the homicide and was subsequently discharged because there was no evidence against him. Under the indictment it was necessary to prove either the assault alleged, the violence charged or that appellant obtained the property by putting the injured party in fear of life or bodily injury. The evidence fails to show an assault. Wharton's Crim. Law, sec. 798; BBarnes v. State, 44 Texas Crim. Rep., 473, 72 S. W. Rep., 168. Nor was there violence proved. 34 Cyc., p. 1799. Appellant, as far as the evidence shows, made no demonstration or threat. He

possessed no arms, so far as disclosed, but had in his hand a stick which was not described either as to its size, or its weight, or its length or the material from which it was made, further than the statement that it was like a walking stick. The "putting in fear" which is referred to in the statute must, to support a conviction of robbery, be sustained by evidence of acts or conduct or words or circumstances reasonably calculated to effect that result. Cyc., vol. 34, p. 1800, subdiv. 4; Steward v. People, 79 N. E. Rep., 638, from which we quote the following: "All authorities agree that to constitute the crime of robbery there must be violence or intimidation of such a character as that the injured party is 'put in fear.' The fear must be of such nature as in reason and common experience is likely to induce a person to part with his property against his will." 24 Am. & Eng. Ency. of Law, 2nd ed., p. 999; Davis v. Commonwealth, 54 S. W. Rep., 959.

Whether the appellant's contention that the jury received information that appellant during the trial had been by the grand jury, then in session, indicted for murder, as shown by the facts, developed on motion for new trial, is one of such doubt that, in view of the court's finding to the contrary, we would hesitate to determine in his favor. The fact that some of the jurors believed, and acted on the belief, that the grand jury had so indicted him is established. This belief was formed from statements made by other jurors, and their statements may have been founded upon the evidence adduced on the trial in cross-examination of appellant that he was accused of the murder. An inquiry into the use made by the jury of legitimate evidence would not be a proper subject of inquiry on motion for new trial. Turner v. State, 61 Texas Crim. Rep., 103. From this record it appears, however, that appellant was not indicted for murder and that the erroneous belief or information that he was so indicted was used against him. The case is somewhat similar, in this respect, to Francis v. State, 57 Texas Crim. Rep., 555. If the State's case was a strong one on the evidence we would not, for the alleged misconduct of the jury, reverse. The State's evidence is meager and of doubtful sufficiency. As stated above, there was no assault or violence; and notwithstanding the injured party testified to fear, the facts justifying his fear are not proved in a satisfactory manner. The weakness of the State's evidence is emphasized by the failure of the injured party to disclose the robbery and by the fact that there was no evasion of arrest upon the part of appellant, but he, on the contrary, remained in the same community with, and met his victim every day. The intimation in his cross-examination by the State's attorney that he was indicted for murder was probably a controlling factor in his conviction.

We think under all the circumstances disclosed by the record, the trial court was in error in refusing to grant a new trial, on which account the judgment of the lower court is reversed and the cause remanded.

*Reversed and remanded.*