In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-02-00079-CR


______________________________




ARLINGTON JOSEPH PITTE, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 182nd Judicial District Court


Harris County, Texas


Trial Court No. 891391




 




Before Morriss, C.J., Ross and Cornelius,* JJ.


Opinion by Justice Cornelius


*William J. Cornelius, C.J., Retired, Sitting by Assignment



O P I N I O N



 A jury in the 182nd Judicial District Court of Harris County convicted Arlington
Joseph Pitte of robbery. The trial court sentenced him to thirty years' confinement. On
appeal, Pitte contends that the judgment should be reversed because the prosecution used
a peremptory challenge to remove an African-American venireman from the venire panel,
and that the evidence is legally and factually insufficient to prove that Pitte (1) threatened
the complainant with imminent harm, (2) placed the complainant in fear of imminent bodily
injury or death, and (3) was the person who committed the robbery. We overrule these
contentions and affirm the judgment.

 The State's evidence showed that, on October 19, 2001, Gail Venzant,
accompanied by her mother and her four-year-old daughter, drove to the bank and cashed
a $420.00 check. Venzant took $200.00 and folded it into her electric bill and put the
remaining $220.00 in her coin purse. Venzant drove by a food market, then dropped off
her mother at home, and then she and her daughter drove to a car wash. On arriving at
the car wash, Venzant noticed a number of other people there, including Pitte, who was
standing near the vacuums. While Venzant was washing her car, the other people at the
car wash left. Pitte then approached Venzant and asked her if she needed help washing
her car. Venzant responded that she did not. Pitte then opened the driver's side of
Venzant's car and grabbed her purse and keys from the driver's side floorboard. Venzant
walked to the driver's side and told Pitte to put down her purse and keys. Pitte replied,
"Bitch, you'd better move or I'll knock you out." Venzant tried to spray Pitte with the car
wash spray gun, but missed. Pitte then fled with Venzant's purse and keys.

 An acquaintance of Venzant arrived at the car wash, discovered what had
happened, and went in the direction that Pitte fled. The acquaintance informed police who
were en route to the scene of the robbery. Officers W. L. Wilson and G. W. Smith chased
after Pitte and apprehended him after just a few minutes.

 Wilson's search of Pitte revealed $220.00 in cash in his pocket. Venzant positively
identified Pitte as the man who had robbed her. Subsequently, Pitte was indicted for
robbery by committing theft while threatening Venzant and placing her in fear of imminent
bodily injury and death.


 In his first point on appeal, Pitte contends the trial court erred by failing to discharge
the jury panel after Pitte charged that the prosecution had exercised a peremptory
challenge to exclude an African-American venire person on the basis of his race. See
Batson v. Kentucky, 476 U.S. 79 (1986).

 The trial court's ruling on a Batson challenge is a finding of fact and will be
overturned on appeal only on a finding that the decision was clearly erroneous. Guzman
v. State, 85 S.W.3d 242, 254 (Tex. Crim. App. 2002); Williams v. State, 804 S.W.2d 95,
101 (Tex. Crim. App. 1991). A finding is clearly erroneous when, although there is
evidence to support the finding, the reviewing court is left with "the definite and firm
conviction that a mistake has been committed." DeBlanc v. State, 799 S.W.2d 701, 713
(Tex. Crim. App. 1990); Whitsey v. State, 796 S.W.2d 707, 721 (Tex. Crim. App. 1989) 
(op. on reh'g) (quoting Anderson v. Bessemer City, 470 U.S. 564, 573-74 (1985)).

 We must review the racial makeup of the venire, the voir dire examination, the
prosecutor's explanations, and the appellant's rebuttal and impeachment evidence in a light
most favorable to the trial court's ruling. See Guzman v. State, 85 S.W.3d at 254; Williams
v. State, 804 S.W.2d at 101-02. We accord great deference to the trial court's findings of
fact. Batson v. Kentucky, 476 U.S. at 98 n.21; see Robinson v. State, 851 S.W.2d 216
(Tex. Crim. App. 1991).

 The Equal Protection Clause of the United States Constitution prohibits a party from
using peremptory challenges to exclude otherwise qualified and unbiased persons from a
jury solely on the basis of their race. Batson v. Kentucky, 476 U.S. at 88. The Texas
Legislature has codified the Batson rule in Tex. Code Crim. Proc. Ann. art. 35.261 (Vernon
1989).

 Three steps constitute a proper Batson challenge. Ford v. State, 1 S.W.3d 691,
693-94 (Tex. Crim. App. 1999) (citing Purkett v. Elem, 514 U.S. 765, 767-69 (1995)). First,
the party making the Batson claim must show a prima facie case of racial discrimination. (1) 
A prima facie case of discrimination may be made by showing that the totality of the
relevant facts gives rise to an inference of discriminatory purpose. (2) Batson v. Kentucky,
476 U.S. at 93-94. Second, the proponent of the strike must rebut the opponent's prima
facie case and come forward with a race-neutral reason for the strike. Id. at 94; Williams
v. State, 937 S.W.2d 479, 485 (Tex. Crim. App. 1996). This explanation need not be
persuasive or even plausible. Purkett v. Elem, 514 U.S. at 768. Thus, if the proponent of
the strike produces a race-neutral reason for the strike, the court determines whether the
movant carried its burden of persuasion by proving purposeful discrimination. Miller-El v.
Cockrell, ___ U.S. ___, 123 S.Ct. 1029 (2003); Purkett v. Elem, 514 U.S. at 767. In this
final step, the critical issue becomes the persuasiveness of the proponent's reason. 
Miller-El v. Cockrell, 123 S.Ct. 1029; Purkett v. Elem, 514 U.S. at 768. 

 To determine if the reason is supported by the record, we consider whether the
reason offered as a basis for the peremptory strike was not related to the case, whether
there was a lack of meaningful questioning of the venire person in question, whether there
was disparate treatment or examination of persons with similar characteristics as the
challenged venire person, and whether there is historical evidence of racial discrimination. 
See Miller-El v. Cockrell, 123 S.Ct. 1029; Williams v. State, 804 S.W.2d at 101. Among
the race-neutral explanations that have defeated a Batson challenge is a concern
regarding the venire person's response to a relevant hypothetical question. Joseph v.
State, 916 S.W.2d 657, 658-59 (Tex. App.-Houston [14th Dist.] 1996, no pet.). 

 The record here does not indicate the number of African-American venire persons
who were within the strike range or the number of African-Americans who served on the
jury. The State's race-neutral explanation of the strike involved the venire person's
propensity to be sympathetic to a defense of being in "the wrong place at the wrong time." 
Pitte's defense at trial was similar to a "wrong time and wrong place" defense. Thus, the
record does support the State's race-neutral explanation for striking the venire person.

 After the State offered this explanation as a race-neutral basis for striking the venire
person, Pitte offered nothing to prove or suggest that this explanation was a pretext or a
sham and, thus, he did not carry his burden of persuasion. When the trial court is offered
no evidence in rebuttal of the State's race-neutral explanation, the reviewing court is not
in a position to say that it feels a definite and firm conviction that the trial court made a
mistake. Ford v. State, 1 S.W.3d at 693. The trial court's denial of the Batson challenge
was not clearly erroneous.

 In his second and third points, Pitte contends the State's evidence is legally and
factually insufficient to prove that he threatened Venzant with imminent bodily harm. When
we review a challenge to the legal sufficiency of the evidence, we view the evidence in a
light most favorable to the verdict to determine if any rational trier of fact could have found
the essential elements of the offense beyond a reasonable doubt. Kutzner v. State, 994
S.W.2d 180, 184 (Tex. Crim. App. 1999); Williams v. State, 827 S.W.2d 614, 616 (Tex.
App.-Houston [1st Dist.] 1992, pet. ref'd). When we review the factual sufficiency of the
evidence, we review all of the evidence as a whole, not in a light most favorable to the trial
court's finding. Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996). We will find
the evidence factually insufficient if it is so weak as to be clearly wrong or unjust or if the
finding is against the great weight and preponderance of the evidence produced at trial. 
Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). We will give the fact-finder a
great amount of deference because it is in the best position to judge the weight and
credibility of the witnesses. Clewis v. State, 922 S.W.2d at 133. The fact-finder is free to
accept or reject all or any part of the testimony. Lehman v. State, 727 S.W.2d 656, 659-60
(Tex. App.-Houston [1st Dist.] 1987), aff'd, 792 S.W.2d 82 (Tex. Crim. App. 1990);
Penagraph v. State, 623 S.W.2d 341, 343 (Tex. Crim. App. [Panel Op.] 1981). 

 Pitte contends the evidence is insufficient to show that Venzant was threatened with
imminent harm as required by statute because the threat allegedly made by him was
conditional rather than imminent. (3) 

 Threats of future harm may not be sufficient to reasonably place another in fear of
imminent bodily injury or death. See Devine v. State, 786 S.W.2d 268, 270 (Tex. Crim.
App. 1989). Under certain circumstances, however, threats that may sound conditional or
speak of future harm can satisfy the element of robbery. See Green v. State, 567 S.W.2d
211 (Tex. Crim. App. [Panel Op.] 1978). When examining a conditional threat to determine
whether it involves future harm or imminent harm, the courts will consider the remoteness
of the occurrence of the condition and the present capability of the accused to carry out the
threat. Devine v. State, 786 S.W.2d at 270; Green v. State, 567 S.W.2d at 211.

 In Green, the appellant threatened the complainant with the words, "If you don't give
me the money, I'm going to cave your head in." Green v. State, 567 S.W.2d at 212. Green
argued that the threat was one that involved only future harm and was, therefore,
insufficient to constitute a threat of imminent bodily injury or death. Id. at 213. However,
since the complainant was in a face-to-face confrontation with Green and Green's
companion, the court found that the threat was sufficient to make the offense robbery. The
court reasoned that, had the complainant not complied with Green's request, the harm was
to be inflicted immediately. Id. 

 Venzant testified that she and her daughter were alone at the car wash with Pitte
and that he threatened to "knock [her] out" if she did not acquiesce to his taking her purse
and keys. Considering the fact that Pitte was only three to four feet away from Venzant,
it is reasonable to believe that he had the current ability to injure her if she did not move
away and let him accomplish his theft. Unlike the threat in Devine, the threat here involved
consequences that were to occur immediately if she did not comply with his demand. In
Devine, the threat involved harm that would occur at an indefinite time and place had the
complainant not met the appellant's demands. Pitte's threats to Venzant more closely
resemble those in Green, where the complainant was alone in a hotel room with Green and
another who appeared to be able to "cave [his] head in" at that point in time and at that
location had the complainant not complied. 

 Viewing the facts in a light most favorable to the verdict, we find the evidence legally
sufficient to find beyond a reasonable doubt that Pitte threatened Venzant with imminent,
rather than future, harm when he made the threat. Viewing all the evidence in a neutral
light, we find it factually sufficient on this issue as well.

 In his fourth and fifth points, Pitte challenges the legal and factual sufficiency of the
evidence to show that Pitte placed Venzant in fear of imminent bodily injury or death, as
required by Tex. Pen. Code Ann. § 29.02 (Vernon 2003).

 A person commits robbery if in the course of committing theft, he "intentionally or
knowingly threatens or places another in fear of imminent bodily injury or death." Tex. Pen.
Code Ann. § 29.02(a)(2). The accused need not expressly threaten another or display a
weapon to commit robbery. See Williams v. State, 827 S.W.2d at 616; Welch v. State, 880
S.W.2d 225, 227 (Tex. App.-Austin 1994, no pet.). It is sufficient to constitute robbery if
the accused places the complainant in fear of bodily injury or death to the degree that
"reason and common experience" will likely induce the complainant to part with his property
against his will. Devine v. State, 786 S.W.2d at 270; Cranford v. State, 377 S.W.2d 957,
958 (Tex. Crim. App. 1964) (citing Easley v. State, 82 Tex. Crim. 238, 199 S.W. 476
(1917)).

 In Cranford, the defendant committed robbery when he approached a cashier in a
grocery store, handed her a note reading, "Give me your money," verbally assured the
cashier that he was not joking, and made a gesture that the cashier thought was a reach
for a weapon. Cranford v. State, 377 S.W.2d at 958. A robbery conviction was also
upheld when the defendant was not armed and made no express threats, but his demands
for money and "generally aggressive manner" were enough to place a reasonable person
in fear of imminent bodily injury or death. Welch v. State, 880 S.W.2d at 227.

 Here, the threat, "Bitch, you'd better move or I'll knock you out" in conjunction with
Pitte's proximity and the other circumstances were sufficient to place Venzant in fear of
imminent bodily injury or death. Like the complainant in Green, Venzant was reasonable
in fearing that, if she did not comply with Pitte's demand, harm would follow immediately. 
Venzant testified that she felt afraid when Pitte threatened her. As a reaction to that fear,
she says, she tried to protect herself by spraying Pitte with the car wash spray gun. She
testified she believed that Pitte was going to hurt her in some way. She said she did not
know if he had a knife or a gun "or what." Reason and common experience suggest that
this set of circumstances would place Venzant in fear likely to induce her to part with her
property against her will. 

 Pitte argues that Venzant was not placed in fear by the words he spoke to her. He
points to the fact that she swung the spray gun at him as evidence that she was not afraid. 
Venzant, however, testified positively that she became afraid after hearing the threat and
believed that Pitte would hurt her in some way. 

 The jury observes the demeanor of the witnesses and has the authority to judge the
witnesses' credibility and determine the weight to give their testimony. See Penagraph v.
State, 623 S.W.2d at 343. From a review of all the evidence, we conclude that the
evidence is legally and factually sufficient to support the finding that Venzant was placed
in fear of bodily injury or death.

 In his sixth and seventh points of error, Pitte asserts that the State did not produce
legally or factually sufficient evidence to rebut his defense of mistaken identity.

 As the State points out, mistaken identity is not a defense. See Giesberg v. State,
984 S.W.2d 245 (Tex. Crim. App. 1998). It is a defensive theory offered to negate the
identity element of the offense. Giesberg v. State, 945 S.W.2d 120, 124 (Tex.
App.-Houston [1st Dist.] 1996), aff'd, 984 S.W.2d 245 (Tex. Crim. App. 1998). The State
carries its burden in a criminal case if it proves each element of the offense beyond a
reasonable doubt, but it is not required to rebut an accused's defensive theory beyond a
reasonable doubt. As did the court in Giesberg, we treat this as a challenge to the
sufficiency of the evidence to prove Pitte's identity beyond a reasonable doubt. Id.

 The State produced more than ample evidence that Pitte was the individual who
robbed Venzant. Venzant testified that she noticed Pitte at the car wash before the
incident. She watched him as he approached her and asked if she wanted help washing
her car. Nothing hindered Venzant's view of Pitte's face. Venzant testified that it was a
clear day, and that she has no vision problems and does not wear glasses. Pitte did not
wear anything to cover his face. She testified that no one else was present at the car wash
when the robbery occurred. She provided the acquaintance who arrived later and the
police with the direction in which Pitte ran and with his description. A man running in that
same direction and fitting that description was found by police. Thirty minutes after the
events, Venzant identified Pitte as the man who robbed her. Pitte was carrying $220.00
in his pocket that matched the amount and denomination of the money Venzant said was
taken from her. 

 The jury heard Venzant's own testimony regarding the identity of the man who
robbed her. Other evidence supports that identification, but the only one who testified to
the identity of the robber and who was actually present at the time of the robbery was
Venzant. A conviction may be based on the testimony of a single eyewitness. See Aguilar
v. State, 468 S.W.2d 75, 77 (Tex. Crim. App. 1971). There is additional identification
evidence here, however.

 In response to Venzant's testimony that Pitte was the man who robbed her, Pitte
asserted that the guilty person is Michael Johnson, an acquaintance who was with him at
the car wash and who is about his same height and weight. Pitte said the money was from
the amount his mother had paid him the day before for doing work around her house. His
mother testified that she had given him $289.00 for doing some work on the house. Pitte
ran, he said, because he saw Johnson take Venzant's keys and start running. He did not
want to get involved "in that jam." Additionally, Pitte questions the reliability of Venzant's
identification because she failed to point out the many visible tattoos he has.

 Granted, Pitte has offered some evidence that he is not the individual who robbed
Venzant. Evidence corroborating Venzant's identification of Pitte as the robber, however,
is abundant. Both investigating officers testified that, before he had an opportunity to
change, Pitte's clothes matched the description Venzant gave as to how he was dressed;
Pitte was seen running from the car wash immediately after the robbery; police
apprehended him shortly after they followed after him in the direction he ran; Pitte had the
exact amount of money and the exact same denomination of money when he was
apprehended that Venzant said he took from her; and Venzant identified Pitte again from
a photographic spread she viewed just before trial. We find legally and factually sufficient
evidence identifying Pitte as the person who robbed Venzant.


 For the reasons stated, we affirm the judgment.


 William J. Cornelius

 Justice


*Chief Justice, Retired, Sitting by Assignment


Date Submitted: December 3, 2003

Date Decided: March 21, 2003


Publish

1. Here, Pitte did not establish a prima facie case of purposeful discrimination. 
However, since the State proceeded to give a race-neutral explanation for the peremptory
strike and the trial court ruled on the matter, we should review the issue. See Hernandez
v. New York, 500 U.S. 352, 359 (1991); Hill v. State, 827 S.W.2d 860, 865 (Tex. Crim.
App. 1992). The issue of Pitte's prima facie case is moot. Hernandez v. New York, 500
U.S. at 359; Hill v. State, 827 S.W.2d at 865. 
2. See Batson v. Kentucky, 476 U.S. 79, 94-95 (1986).
3. Robbery can be committed by either threatening or by placing another in fear of
imminent bodily injury or death. See Vaughn v. State, 634 S.W.2d 310, 312 (Tex. Crim.
App. [Panel Op.] 1982).


e:10.0pt;
 mso-bidi-font-size:10.0pt;
 font-family:"Times New Roman","serif";
 mso-ascii-font-family:"Times New Roman";
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;
 mso-hansi-font-family:"Times New Roman";}
span.HeaderChar
 {mso-style-name:"Header Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Header;
 mso-ansi-font-size:12.0pt;
 mso-bidi-font-size:12.0pt;
 font-family:"Times New Roman","serif";
 mso-ascii-font-family:"Times New Roman";
 mso-hansi-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";}
span.FooterChar
 {mso-style-name:"Footer Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Footer;
 mso-ansi-font-size:12.0pt;
 mso-bidi-font-size:12.0pt;
 font-family:"Times New Roman","serif";
 mso-ascii-font-family:"Times New Roman";
 mso-hansi-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";}
.MsoChpDefault
 {mso-style-type:export-only;
 mso-default-props:yes;
 mso-ascii-font-family:Calibri;
 mso-ascii-theme-font:minor-latin;
 mso-fareast-font-family:"Times New Roman";
 mso-fareast-theme-font:minor-fareast;
 mso-hansi-font-family:Calibri;
 mso-hansi-theme-font:minor-latin;
 mso-bidi-font-family:"Times New Roman";
 mso-bidi-theme-font:minor-bidi;}
.MsoPapDefault
 {mso-style-type:export-only;
 margin-bottom:10.0pt;
 line-height:115%;}
 /* Page Definitions */
 @page
 {mso-page-border-surround-header:no;
 mso-page-border-surround-footer:no;
 mso-footnote-separator:url("6-10-232-CR%20Gallaghan%20v.%20State%20FINAL%20HOLD%20mtd_files/header.htm") fs;
 mso-footnote-continuation-separator:url("6-10-232-CR%20Gallaghan%20v.%20State%20FINAL%20HOLD%20mtd_files/header.htm") fcs;
 mso-endnote-separator:url("6-10-232-CR%20Gallaghan%20v.%20State%20FINAL%20HOLD%20mtd_files/header.htm") es;
 mso-endnote-continuation-separator:url("6-10-232-CR%20Gallaghan%20v.%20State%20FINAL%20HOLD%20mtd_files/header.htm") ecs;}
@page WordSection1
 {size:8.5in 11.0in;
 margin:1.0in 1.0in 1.0in 1.0in;
 mso-header-margin:1.0in;
 mso-footer-margin:1.0in;
 mso-even-header:url("6-10-232-CR%20Gallaghan%20v.%20State%20FINAL%20HOLD%20mtd_files/header.htm") eh1;
 mso-header:url("6-10-232-CR%20Gallaghan%20v.%20State%20FINAL%20HOLD%20mtd_files/header.htm") h1;
 mso-even-footer:url("6-10-232-CR%20Gallaghan%20v.%20State%20FINAL%20HOLD%20mtd_files/header.htm") ef1;
 mso-footer:url("6-10-232-CR%20Gallaghan%20v.%20State%20FINAL%20HOLD%20mtd_files/header.htm") f1;
 mso-first-header:url("6-10-232-CR%20Gallaghan%20v.%20State%20FINAL%20HOLD%20mtd_files/header.htm") fh1;
 mso-first-footer:url("6-10-232-CR%20Gallaghan%20v.%20State%20FINAL%20HOLD%20mtd_files/header.htm") ff1;
 mso-paper-source:0;}
div.WordSection1
 {page:WordSection1;}
@page WordSection2
 {size:8.5in 11.0in;
 margin:2.0in 1.0in 1.0in 1.0in;
 mso-header-margin:2.0in;
 mso-footer-margin:1.0in;
 mso-even-header:url("6-10-232-CR%20Gallaghan%20v.%20State%20FINAL%20HOLD%20mtd_files/header.htm") eh1;
 mso-header:url("6-10-232-CR%20Gallaghan%20v.%20State%20FINAL%20HOLD%20mtd_files/header.htm") h1;
 mso-even-footer:url("6-10-232-CR%20Gallaghan%20v.%20State%20FINAL%20HOLD%20mtd_files/header.htm") ef1;
 mso-footer:url("6-10-232-CR%20Gallaghan%20v.%20State%20FINAL%20HOLD%20mtd_files/header.htm") f2;
 mso-first-header:url("6-10-232-CR%20Gallaghan%20v.%20State%20FINAL%20HOLD%20mtd_files/header.htm") fh1;
 mso-first-footer:url("6-10-232-CR%20Gallaghan%20v.%20State%20FINAL%20HOLD%20mtd_files/header.htm") ff1;
 mso-paper-source:0;}
div.WordSection2
 {page:WordSection2;}
-->











 
 
 
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-10-00232-CR

                                                ______________________________

 

 

                     REGENA NELL ECHOLS GALLAGHAN,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                         On Appeal from the 6th Judicial District Court

                                                             Lamar County, Texas

                                                            Trial
Court No. 22083

 

                                                            
                                      

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                                        Opinion by Justice Moseley








                                                     MEMORANDUM 
OPINION

 

            Regena
Nell Echols Gallaghan[1]
appeals the revocation of her community supervision for the underlying offense
of forgery of a financial instrument, repeat offender, and resulting sentence
of six years imprisonment.  The States
motion to revoke community supervision alleged that Gallaghan acquire[d] or
otherwise exercise[d] control over, property, to-wit:  electronics, of the value of less than $1,500,
from Josh Benedict, representative of Wal-Mart, the owner thereof, without the
effective consent of the owner, and failed to pay court costs, community
supervision fees, Crimestoppers program fee, attorneys fees, a $500.00 fine,
and restitution pursuant to her conditions of community supervision.  

            Gallaghan
complains that the indictment for the underlying forgery conviction was fundamentally
defective because the indictment was for writing forged checks to McCoys
Lumber but the checks were apparently to Cavenders.  Thus, Gallaghan asserts the position that she
was, therefore, tried for a crime for which she was not indicted, and the
conviction is, therefore, void. 
Gallaghan further asserts that the evidence is insufficient to prove
that she stole from Wal-Mart (an act which would be a violation of one of the
conditions of her community supervision). 
Finally, Gallaghan maintains that even if the evidence showed that she
failed to pay the court costs, community supervision fees, Crimestoppers
program fee, attorneys fees, a $500.00 fine, and restitution, there was
insufficient evidence to demonstrate that she had the ability to pay those
funds.  

I.          The Underlying Forgery
Indictment Was Not Fundamentally Defective 

            In
this case, count two[2]
of the indictment alleged Gallaghan pass[ed] to Brian Prichard, as a representative
of McCoys Lumber Company, a forged writing knowing such writing to be forged,
and such writing had been so made that it purported to be the act of Sammy
Carroll or Oletha Davis, who did not authorize the act.  Again, the indictment included copies of the
checks.  However, the checks were made
out to Cavenders instead of McCoys Lumber and contained the allegedly forged
signature of Osterbuhr, not Carroll or Davis, as stated in the written count.  Pursuant to a plea bargain, Gallaghan pled
guilty to the indictment.  The trial
courts judgment listed Cavenders Boot City as the victim of the offense. 

            Gallaghan
cites to several cases in her brief for the proposition that she may complain
on appeal from a community supervision revocation proceeding that the
underlying indictment was fundamentally defective.[3]  These cited cases are from a time when
failure to object to a defect of substance did not waive error on appeal; [t]he
reasoning was that an indictment that contained a substantive defect was void
and therefore insufficient to invoke the jurisdiction of the court.  Teal v.
State, 230 S.W.3d 172, 175 (Tex. Crim. App. 2007).  This is no longer the law.  Id.  A charge is fundamentally defective if it
authorizes a conviction on a set of facts that do not constitute an
offense.  Zuckerman v. State, 591 S.W.2d 495, 496 (Tex. Crim. App. [Panel
Op.] 1979).  The proper test to
determine if a charging instrument alleges an offense is whether the
allegations in it are clear enough that one can identify the offense
alleged.  If they are, then the
indictment is sufficient to confer subject matter jurisdiction.  Teal,
230 S.W.3d at 180. 

            Gallaghan
does not complain that the indictment failed to allege the offense of
forgery.  Instead, she complains that the
indictment set forth a different forgerythat of Carroll or Davis instead of
Osterbuhr.  

            Thus,
Gallaghans complaint is one covered by Article 1.14 of the Texas Code of
Criminal Procedure. 

If the defendant does not object to a defect,
error, or irregularity of form or substance in an indictment or information
before the date on which the trial on the merits commences, he waives and
forfeits the right to object to the defect, error, or irregularity and he may
not raise the objection on appeal or in any other postconviction proceeding.

 

Tex.
Code Crim. Proc. Ann. art. 1.14(b) (West 2005).  Because Gallaghan failed to object to the
defect in the underlying proceeding, her argument has been waived.  Teal,
230 S.W.3d at 178 ([A]ll substantive defects in indictments are waiveable
under the statutes and these defects do not render the indictment
void.).  Moreover, Teal instructs us to look at the
indictment as a whole, not to its specific formal requisites.  Id. at
180.  Because the indictment incorporated
the checks (which contained the proper victim of the offense and the correct
name of the signature forged), Gallaghans argument that she was convicted for
committing an offense against a different person from the complaint in the
offense on trial, must fail. 

            We
overrule this point of error.  

II.        Trial Court Did Not
Abuse Its Discretion in Revoking Community Supervision

            Next,
Gallaghan complains that the evidence was insufficient to prove that she
violated her community supervision by committing another offense.  

            A.        Standard of Review 

            We
will review the trial courts decision to revoke community supervision for an
abuse of discretion.  Rickels v. State, 202 S.W.3d 759, 763
(Tex. Crim. App. 2006); In re T.R.S.,
115 S.W.3d 318, 320 (Tex. App.Texarkana 2003, no pet.).  The trial court does not abuse its discretion
if the order revoking community supervision is supported by a preponderance of
the evidence; in other words, if the greater weight of the credible evidence
would create a reasonable belief that the defendant has violated a condition of
his community supervision.  Rickels, 202 S.W.3d at 76364; T.R.S., 115 S.W.3d at 32021. 

            Considering
the unique nature of a revocation hearing and the trial courts broad
discretion in the proceedings, the general standards for reviewing sufficiency
do not apply.  Pierce v. State, 113 S.W.3d 431, 436 (Tex. App.Texarkana 2003,
pet. refd).  Instead, we review the
trial courts decision regarding community supervision revocation for an abuse
of discretion and examine the evidence in a light most favorable to the trial
courts order.  Cardona v. State, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984); T.R.S., 115 S.W.3d at 321; Pierce, 113 S.W.3d at 436 (citing Garrett v. State, 619 S.W.2d 172, 174
(Tex. Crim. App. [Panel Op.] 1981)).  If
a single ground for revocation is supported by a preponderance of the evidence
and is otherwise valid, then no abuse of discretion is shown.  Sanchez
v. State, 603 S.W.2d 869, 871 (Tex. Crim. App. [Panel Op.] 1980); T.R.S., 115 S.W.3d at 321 (citing Stevens v. State, 900 S.W.2d 348, 351
(Tex. App.Texarkana 1995, pet. refd)). 


            B.        Gallaghans Testimony Leads to the
Finding that She Committed Theft

            Gallaghan
argues that her plea of true to the States motion to revoke community
supervision was not a plea as to each and every allegation.  Following this argument further, Gallaghan
maintains that the State was required to introduce evidence to prove either that
(1) she committed an offense in violation of the terms of her community
supervision by a preponderance of the evidence, or (2) she had not only the
responsibility to pay the court costs, community supervision fees,
Crimestoppers program fee, attorneys fees, $500.00 fine, and restitution ordered
by the court, she possessed the ability to do so. 

            Gallaghan
filed a written plea to the motion to revoke community supervision, in which
she acknowledged in writing that each and every allegation contained in the
Petition was true.[4]  In open court, Gallaghan was asked:

            THE
COURT:  In Cause Number 22083, which is a
motion to revoke your community supervision, Im looking at a document entitled
written plea admonishments on motion to revoke community supervision or
petition to proceed to adjudication. 
Its dated today.  It bears you
and Mr. Massars signatures.  Im going
to show you this document and ask you, do you recall signing this document?

 

            THE
DEFENDANT:  Yes, sir.

 

            .
. . .

 

            THE
COURT:  . . . . Now, you understand, in
each of these documents there is a judicial confession.  In the motions to revoke youre stating that
you violated the terms and conditions of your probation.  And in the theft of property of under 1,500
with two priors, youre confessing to the fact that you did commit that offense
and that you have two prior convictions. 
Do you understand that?

 

            THE
DEFENDANT:  Yes, sir.

 

            .
. . .

 

            THE
COURT:  . . . . In Cause Number 22083,
which is a motion to revoke your community supervision, how do you plead, true
or not true?

 

            THE
DEFENDANT:  True. 

 

The theft allegation contained
within the motion to revoke Gallaghans community supervision gave rise to a
separate prosecution for theft, in which Gallaghan also pled guilty.[5]  A plea of true, standing alone, is sufficient
to support the revocation of community supervision.  Cole v.
State, 578 S.W.2d 127, 128 (Tex. Crim. App. [Panel Op.] 1979).

            In
addition to Gallaghans testimony, her husband, John, testified as well.  John related that Gallaghan had anger
issues and became angry upon discovering that DVDs she had purchased from
Wal-Mart were messed up.  John
testified further that, She went to take them back; they refused to take them
because they were already opened.  Well,
she got upset and she did what she had to do. 
Gallaghan explained that she got very angry, went and got the three
same movies and I traded them out.  She
testified that her action in attempting to take the new DVDs was very stupid.[6]  

            Considering
the record in a light most favorable to the trial courts ruling, we find that
the greater weight of the credible evidence could create a reasonable belief
that Gallaghan committed theft in violation of the condition of community
supervision requiring her to abstain from committing an offense against the
laws of Texas, we affirm the trial courts judgment.  Therefore, the trial court did not abuse its
discretion in revoking Gallaghans community supervision.[7]  

III.       Conclusion


            We
affirm the trial courts judgment. 

             

                                                                        Bailey
C. Moseley

                                                                        Justice

 

Date Submitted:          June 28, 2011

Date Decided:             July 15, 2011

 

Publish            

 

 











[1]The
courts judgment in companion case number 06-10-00231-CR refers to Gallaghan
Regena Echols, and in cause number 06-10-00233-CR, she is referred to as Regena
Nell Gallaghan.  To avoid confusion, we
list Gallaghans full name in this opinion as well as in our opinions in the
above-referenced companion cases. 





[2]Count
one of the States indictment for the underlying offense of forgery alleged
that Gallaghan altered or executed a check so it is purported to be the act of
Jill Osterbuhr, who did not authorize the act. 
The indictment contained a copy of the check purporting to bear Jill Osterbuhrs
signature.  Gallaghan does not complain
about the indictment relating to this count. 

 





[3]See Morgan v. State, 571 S.W.2d 333
(Tex. Crim. App. 1978). 





[4]Gallaghan
asserts that her written judicial confession was not introduced as evidence at
the trial courts hearing and cannot be considered.  We disagree. 
The written confession signed by Gallaghan was made as part of plea
admonishmentsStates Exhibit No. 1filed with the district clerk and included
in the clerks record that is before us.  We review the entire record when reviewing
complaints regarding sufficiency of the evidence.  Jackson v. Virginia,
443 U.S. 307, 334 (1979).





[5]Gallaghans
pleas on her motion to revoke in this cause, as well as a motion to revoke in
another cause for an underlying offense of credit/debit card abuse, and the
separate theft charge arising from the Wal-Mart incident were all heard simultaneously.  Filing separate briefs, Gallaghan appealed
the trial courts revocation of community supervision for credit/debit card
abuse in our cause number 06-10-00231-CR, as well as her conviction for theft
in cause number 06-10-00233-CR.  





[6]Gallaghan
argues that her testimony did not establish that she left the store with the
DVDs or that the offense was committed in the county where the trial [was]
sought.  However, theft is unlawful
appropriation, or taking, of property with the intent to deprive the owner of
the property.  Tex. Penal Code Ann. § 31.03(a) (West 2011).  [A]sportation--the act of carrying away or
removing property--is not an element of statutory theft.  Hawkins
v. State, 214 S.W.3d 668, 670 (Tex. App.Waco 2007, no pet.); see Nautilus
Ins. Co. v. Steinberg, 316 S.W.3d 752, 756 (Tex. App.Dallas 2010, pet.
denied) (citing Hill v. State, 633
S.W.2d 520, 521 (Tex. Crim. App. 1982)); see
also Edwards v. State, 440 S.W.2d 648, 649 (Tex. Crim. App. 1969).  Also, because the conditions of Gallaghans
community supervision prevented her from committing an offense against the
laws of this State, or any other State or of the United States, the theft was
not required to be committed in Lamar County for the purposes of the revocation
proceeding.

 





[7]Because
the ground alleging Gallaghan violated her community supervision by committing
theft was supported by a preponderance of the evidence, we need not reach
Gallaghans complaints that the State failed to prove she had the ability to
pay the court costs, community supervision fees, Crimestoppers program fee,
attorneys fees, $500.00 fine, and restitution imposed by the conditions of
community supervision.