**Opinion issued August 8, 2019**



In The

# Court of Appeals

For The

# First District of Texas

————————————

**NO. 01-18-00769-CR**

———————————

**ROBERT H. MCCRACKEN, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 208th District Court**
**Harris County, Texas**
**Trial Court Case No. 1581630**

---

**MEMORANDUM OPINION**

Robert McCracken was indicted for aggravated robbery[1] but was convicted

by a jury only of the lesser included offense of robbery.[2] On appeal, he contends

---

[1]     *See* TEX. PENAL CODE § 29.03.

[2]     *See id.* § 29.02.

(1) that the trial court erred by refusing to instruct the jury on the lesser included offense of theft and (2) that the evidence was insufficient to support the jury's guilty verdict. Finding no error, we affirm.

**Background**

A. Bradley works at a Target store in west Houston and investigates whether the store is losing items to shoplifting. He is what's sometimes called a loss-prevention investigator. One day at the store, a man carrying a backpack and wearing a big jacket on a day that wasn't cold caught Bradley's attention. Bradley watched the man through the store's camera systems. He saw the man putting several expensive electronics and other merchandise into a shopping cart. He then saw the man leave the store through the entrance-only doors. The doors would not have opened to allow the man to leave were it not for other shoppers coming into the store from outside.

Bradley followed the man outside, began approaching him, and tried to get his attention. The man wasn't running, but he was still pushing the cart containing the electronics and merchandise until he reached the distance from the storefront that triggered a sensor on the cart to lock its wheels. The cart stopped at a red, spherical sidewalk fixture just outside the storefront.

As the man kept trying to pull the locked cart, he spoke to Bradley "with threatening words and cursing." At first, the man warned Bradley, "Don't come

2

close," and said that he had been having a bad day. The man continued, "Leave me the hell alone," and cursed more. Bradley responded, "I need my merchandise back, and you come back with me. I just need my stuff back."

Then, the man said, "If you come any closer, I will whoop your ass with this bat." The man put his hand on a small, souvenir-style bat that was poking out of his backpack but did not pull it out.

Bradley stopped approaching the man and "stayed [his] distance" about 10 feet away. Bradley didn't see any other kind of weapon on the man, and the man was not lunging toward him. But Bradley stopped approaching because he "didn't want to get hit." Bradley believed that the man had a weapon—the bat—and Bradley was "not going to try to entertain any kind of physical contact." He decided not to pursue the man because of the bat, fearing that if he got any closer, Bradley "could be facing serious bodily injury." All the while, the man continued to curse and yell at Bradley.

Eventually, the man walked away, leaving behind the merchandise and the cart. Bradley then called law enforcement, and Bradley's co-worker, A. Gulbadeen, approached him.

Bradley left in his car for his lunch break, and a law-enforcement officer arrived at the Target. While driving, Bradley discovered where the man had

gone—sitting on the curb outside a nearby store in the same shopping center. Bradley pointed the man's location out to the law-enforcement officer.

Gulbadeen works in guest services at the same Target. During Bradley's encounter with the man pushing the cart, Gulbadeen was leaving from his shift to go to his car when the man's cursing caught his attention. He heard the man yelling; "using the 'F' word"; and saying something like, "If you walk over here, I will hit you with the bat." While observing all this, Gulbadeen wasn't in fear for Bradley's safety. He did not call law enforcement or try to find a weapon. But he was also "substantially farther away" from the man than Bradley was.

Deputy K. Thompson, with the Harris County Precinct 5 Constable's Office, was the law-enforcement officer dispatched to Bradley's shoplifting call. Deputy Thompson encountered the man where Bradley had found him and attempted to detain him. In response, the man pushed Deputy Thompson's hand away, jumped up, and clenched his fists. Deputy Thompson then unholstered his taser because of the man's "aggressive behavior and the fact that there was a—that he had a backpack on with a baseball bat sticking out of it." He called for backup. The other officers arrived and detained the man without further incident. Deputy Thompson did not search the backpack.

On the day of the incident, Deputy D. Devey, also an officer with Precinct 5, arrived at the Target to discover her colleagues and Bradley outside the store's

loss-prevention office. While Deputy Devey spoke with Bradley, the man, who was handcuffed and within earshot, volunteered: "I threatened him because he threatened me first." Deputy Devey helped identify the man as Robert McCracken.

A Harris County grand jury indicted McCracken for aggravated robbery. He proceeded to trial before a jury, and the State adduced testimony from Bradley, Gulbadeen, Deputy Thompson, and Deputy Devey establishing the narrative set forth above.

When the State rested, defense counsel moved for a directed verdict on the "deadly weapon" element of aggravated robbery,[3] but the trial court denied the motion.

At the charge conference, defense counsel asked for a jury instruction on the lesser included offense of theft. The trial court denied the request and instructed the jury on only aggravated robbery and the lesser included offense of robbery. The jury found that McCracken was guilty of simple robbery.

On appeal, McCracken contends that the evidence is insufficient to support the jury's robbery finding and that the trial court erred by refusing to instruct the jury on the lesser included offense of theft.

---

[3] *See* TEX. PENAL CODE § 29.03(a)(2).

**Evidentiary Sufficiency**

McCracken challenges the sufficiency of the evidence supporting his robbery conviction—specifically, whether he intentionally or knowingly threatened or placed Bradley in fear of imminent bodily injury and whether he did so "in the course of committing theft." *See* TEX. PENAL CODE § 29.02(a), (a)(2). Although this is his second appellate issue, we address it first because, if successful, it could afford McCracken greater relief—an acquittal. *See Price v. State*, 502 S.W.3d 278, 281 (Tex. App.—Houston [14th Dist.] 2016, no pet.); *Cleveland v. State*, 177 S.W.3d 374, 387 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) (en banc).

## I.  Standard of review and applicable law

We review evidentiary-sufficiency challenges under the standard set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *See Lee v. State*, 537 S.W.3d 924, 926 (Tex. Crim. App. 2017); *Buentello v. State*, 512 S.W.3d 508, 515 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd). Under this standard, the evidence is sufficient to support a conviction if, considering the evidence in the light most favorable to the verdict, a rational factfinder could have found that each essential element of the charged offense was proven beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319; *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009); *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). The standard applies equally

to both direct and circumstantial evidence. *See King v. State*, 895 S.W.2d 701, 703 (Tex. Crim. App. 1995); *Ervin v. State*, 331 S.W.3d 49, 55 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd).

There are generally four circumstances in which evidence is insufficient to support a conviction: (1) when no evidence that is probative of an element of the offense exists in the record; (2) when only a "modicum" of evidence that is probative of an element of the offense exists; (3) when the evidence conclusively establishes a reasonable doubt; or (4) when the alleged acts do not establish the criminal offense charged. *See Buentello*, 512 S.W.3d at 515 (citing *Jackson*, 443 U.S. at 314, 320; *Laster*, 275 S.W.3d at 518; *Williams*, 235 S.W.3d at 750).

We do not weigh evidence or evaluate witness credibility; those are for the factfinder. *See Williams*, 235 S.W.3d at 750. Instead, we determine whether the factfinder's explicit and implicit findings are rational by viewing all the evidence in the light most favorable to the verdict and resolving any inconsistencies in the evidence in favor of the verdict. *See Adelman v. State*, 828 S.W.2d 418, 422 (Tex. Crim. App. 1992); *Buentello*, 512 S.W.3d 515–16.

A person commits the offense of robbery when, "in the course of committing a theft as defined in Chapter 31 and with intent to obtain or maintain control of the property, he: . . . intentionally or knowingly threatens or places another in fear of imminent bodily injury or death." TEX. PENAL CODE § 29.02(a), (a)(2). A person

7

commits the offense of theft when "he unlawfully appropriates property with intent to deprive the owner of property." *Id.* § 31.03(a). "'In the course of committing theft' means conduct that occurs in an attempt to commit, during the commission, or in immediate flight after the attempt or commission of theft." *Id.* § 29.01(1); *see Ulloa v. State*, 570 S.W.2d 954, 956–57 (Tex. Crim. App. [Panel Op.] 1978).

**II.     The evidence is sufficient to support the jury's findings that McCracken intentionally or knowingly threatened or placed Bradley in fear of imminent bodily injury in the course of committing theft.**

The testimony of Bradley, Gulbadeen, Deputy Thompson, and Deputy Devey addresses whether McCracken intentionally or knowingly threatened or placed Bradley in fear of imminent bodily injury and whether McCracken did so "in the course of committing theft."

Bradley testified that McCracken yelled and cursed at him and told him, "If you come any closer, I will whoop your ass with this bat." McCracken then put his hand on the bat. All this made Bradley keep his distance, though he had previously been approaching McCracken. Gulbadeen also heard McCracken yelling, cursing, and threatening Bradley with reference to the bat. Bradley testified that he stayed put because he "didn't want to get hit" and that he was "not going to try to entertain any kind of physical contact." He refused to pursue McCracken any farther because of the bat. And he feared that, if he kept going, he "could be facing serious bodily injury."

Deputy Thompson's later encounter with McCracken sheds further light on the nature of Bradley's interaction with McCracken. Deputy Thompson testified that, while trying to detain McCracken, Deputy Thompson unholstered his taser because of what Deputy Thompson called McCracken's "aggressive behavior" and his ready access to the bat.

Deputy Devey's testimony about McCracken's remark during her conversation with Bradley reveals that McCracken understood his own comments to Bradley to be threatening.

Based on the testimony, we conclude that, viewed in the light most favorable to the verdict, the evidence is sufficient to establish that McCracken intentionally or knowingly threatened or placed Bradley in fear of imminent bodily injury. *See* TEX. PENAL CODE § 29.02(a)(2); *Jackson*, 443 U.S. at 319; *Laster*, 275 S.W.3d at 517; *Williams*, 235 S.W.3d at 750.

As to whether the evidence is sufficient to support a finding that McCracken intentionally or knowingly threatened Bradley "in the course of committing theft," the evidence of McCracken's comments to Bradley while grabbing the bat, and the other surrounding circumstances, suffices. This part of the encounter took place on the sidewalk just outside the Target's storefront, next to one of the red, spherical sidewalk fixtures. It also took place while McCracken stopped trying to pull the cart with the wheels locked and started to walk away, which indicates that he was

9

trying to flee from the scene. Even if, as McCracken suggests, his theft was "completed" by the time of the interaction with Bradley, the statutory definition of "in the course of committing theft" includes circumstances like these, that is, acts taken or words said "in immediate flight after the attempt or commission of theft." *See* TEX. PENAL CODE § 29.01(1); *Ulloa*, 570 S.W.2d at 956–57. We therefore conclude that the evidence, viewed in the light most favorable to the verdict, is sufficient to establish that McCracken was "in the course of committing theft." *See* TEX. PENAL CODE § 29.02(a), (a)(2); *Jackson*, 443 U.S. at 319; *Laster*, 275 S.W.3d at 517; *Williams*, 235 S.W.3d at 750.

Finally, McCracken urges that *Easley v. State*, 199 S.W. 476 (Tex. Crim. App. 1917), involves analogous circumstances and requires a reversal here. In *Easley*, "all the circumstances disclosed by the record" led the Court of Criminal Appeals to reverse a robbery conviction. *Id.* at 478. Those circumstances included not only the complainant's testimony about the alleged robbery but also (1) references to an extraneous indictment for murder against Easley, (2) the complainant's failure to report the alleged robbery soon after it took place, and (3) Easley's continuing to meet with the complainant "every day" after the alleged robbery. *See id.* at 477–78.

As to the alleged robbery, the complainant testified that Easley, whom he knew, "came up behind" him one "night after the stores in town were closed"

10

while he walking home from town. *Id.* at 477. Easley was carrying something "like a walking stick," and nothing else in the record explained any further what it was. *See id.* at 478. The complainant testified that Easley said to him, "I want your pocketbook," but Easley "did not draw it (the stick) on" him. *Id.* at 477. The complainant then turned and, facing Easley, called him by name and asked him, "Clofus, what in the world do you mean?" *Id.* The complainant "didn't think [Easley] would rob [him] and was certainly surprised when [Easley] did it." *Id.* The complainant gave Easley his pocketbook "because he had a stick in his hand," though Easley had "never raised it." *Id.* The complainant simply "didn't want any trouble" and "was afraid [Easley] would kill [him] if [he] didn't give it to him." *Id.* The complainant testified that he gave Easley "the pocketbook through fear"; if he "hadn't been afraid," Easley "never would have got it." *Id.*

After the incident, though, the complainant did not report to the police what had happened. *Id.* In fact, the complainant testified that he "never would have told" of the alleged robbery at all "if the grand jury had not got [him]." *Id.* He did not remember the exact date of the alleged robbery and therefore "decided that, under the circumstances, [he] would not say anything about it, and did not try to remember it." *Id.* He did not mention it to anyone until some time later, after he learned that Easley "had been arrested on suspicion of connection with [a] homicide." *Id.*

11

The Court of Criminal Appeals held that, under "all the circumstances disclosed by the record," the evidence was insufficient to support Easley's conviction for robbery because Easley did not "put" the complainant "in fear of life or bodily injury." *See id.* at 478. To support a conviction for robbery, "the 'putting in fear'" element of robbery must "be sustained by evidence of acts or conduct or words or circumstances reasonably calculated to effect that result." *Id.* The complainant's testimony was insufficient because, "notwithstanding the [complainant] testified to fear," (1) he failed "to disclose the robbery," (2) Easley "met [the complainant] every day" thereafter, and (3) the disclosure before the jury that Easley had been indicted for an extraneous murder "was probably a controlling factor in his conviction" for robbery. *Id.*

This case is different. Though McCracken didn't "draw" his bat, like Easley didn't draw his walking-stick-like implement, he did threaten Bradley that he would "whoop your ass with this bat." Gulbadeen overheard McCracken's threat. By contrast, Easley made no similar threat, telling the complainant only "I want your pocketbook." *See id.* at 477–78. McCracken's later aggression with Deputy Thompson, and easy access to a bat in his backpack, also distinguishes his case from *Easley*. And McCracken himself admitted that he threatened Bradley.

Finally, nothing in this case compares to the circumstances following the alleged robbery in *Easley*. Those circumstances undermined the sufficiency of the

12

complainant's testimony to establish a "putting in fear." Bradley had no prior or subsequent acquaintance with McCracken and almost immediately called law enforcement to report McCracken's conduct. And, though Easley's extraneous murder indictment probably drove his robbery conviction, McCracken's jury heard no similar evidence. In any event, the trial court instructed McCracken's jury that indictments cannot be considered as evidence of guilt, they could not consider "any matters not in evidence," their "sole duty . . . is to determine the guilt or innocence of [McCracken] under the indictment in this cause," and they should "restrict . . . deliberations solely to the issue of guilt or innocence." *Easley* does not require a different outcome here.

Accordingly, we overrule McCracken's second issue.

**Refusal of Theft Instruction**

In his first issue, McCracken contends that the trial court erred by refusing to instruct the jury on theft as a lesser included offense because the jury rationally could have found that he had completed the theft by the time of his words and conduct that placed Bradley in fear of imminent bodily injury. This would mean that the jury could have rationally found a completed theft but not the additional robbery element that McCracken's words and conduct toward Bradley were done "in the course of committing [the] theft." *See* TEX. PENAL CODE § 29.02(a).

13

We follow a two-step test for determining whether a trial court is required to give a requested instruction on a lesser included offense. *Bullock v. State*, 509 S.W.3d 921, 924 (Tex. Crim. App. 2016). The first step is to determine whether the requested instruction pertains to an offense that is a lesser included offense of the charged offense, which is a matter of law. *Id.* An offense is a lesser included offense if it is within the proof necessary to establish the offense charged. *Id.*; *Sweed v. State*, 351 S.W.3d 63, 68 (Tex. Crim. App. 2011); *see also* TEX. CODE CRIM. PROC. art. 37.09. Here, we need not address this step because the State agrees that theft is a lesser included offense of robbery. *See Sweed*, 351 S.W.3d at 68 & n.4; *Bignall v. State*, 887 S.W.2d 21, 23 (Tex. Crim. App. 1994).

The second step asks whether the record contains evidence that supports giving the instruction. *Bullock*, 509 S.W.3d at 924–25; *Sweed*, 351 S.W.3d at 68. A defendant is entitled to an instruction of a lesser included offense when some evidence in the record would permit a jury to rationally find that, if the defendant is guilty, he is guilty only of the lesser included offense. *Bullock*, 509 S.W.3d at 925; *Rice v. State*, 333 S.W.3d 140, 145 (Tex. Crim. App. 2011). The evidence must establish that the lesser included offense is a valid, rational alternative to the charged offense. *Bullock*, 509 S.W.3d at 925; *Rice*, 333 S.W.3d at 145.

The second step requires examining all the evidence admitted at trial, not just the evidence presented by the defendant. *Bullock*, 509 S.W.3d at 925; *Goad v.*

14

*State*, 354 S.W.3d 443, 446 (Tex. Crim. App. 2011). We may not "pluck[] certain evidence from the record and examin[e] it in a vacuum." *Enriquez v. State*, 21 S.W.3d 277, 278 (Tex. Crim. App. 2000); *accord Bullock*, 509 S.W.3d at 925 ("[A] statement made by the defendant cannot be plucked out of the record and examined in a vacuum.").

Anything more than a scintilla of evidence—regardless of its credibility or whether it conflicts with other evidence—is adequate to entitle a defendant to a lesser charge. *Bullock*, 509 S.W.3d at 925; *Goad*, 354 S.W.3d at 446–47. Although this threshold showing is low, it is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense; the record must contain some evidence directly germane to the lesser included offense for the factfinder to consider before the instruction is warranted. *Bullock*, 509 S.W.3d at 925; *Sweed*, 351 S.W.3d at 68. "Accordingly, . . . the standard may be satisfied if some evidence refutes or negates other evidence establishing the greater offense or if the evidence presented is subject to different interpretations." *Sweed*, 351 S.W.3d at 68.

In considering whether a lesser offense is a valid, rational alternative to the charged offense, we compare the statutory requirements between the greater offense (here, robbery) and the lesser offense (here, theft) to determine whether the evidence could support a conviction for theft but not robbery. *See Bullock*, 509 S.W.3d at 925. To have found McCracken guilty only of theft, the jury would have

to have found that he stole the merchandise but only threatened or placed Bradley in fear of imminent bodily injury some time after the "immediate flight after the attempt or commission of [the] theft," with some intervening event or circumstance between the immediate flight and the threat or putting in fear of serious bodily injury. *See* TEX. PENAL CODE §§ 29.01(1), 29.02(a), (a)(2); *Bullock*, 509 S.W.3d at 925; *Sweed*, 351 S.W.3d at 68–69.

McCracken contends that his theft of the merchandise was completed and abandoned by the time of his confrontation with Bradley involving the bat. Like the appellant in *Sweed*, he argues, the jury could rationally have found him guilty of theft but not robbery.

*Sweed*, however, is distinguishable. Sweed stole a nail gun from a work area, then fled the work area and went into an apartment. *Sweed*, 351 S.W.3d at 69. "He remained inside the apartment for five to twenty minutes, during which time he hid the nail gun and changed clothes." *Id.* He then left the apartment, walked elsewhere in the complex, and talked with some people for five to ten minutes. *Id.* Only after all this did Sweed encounter the complainant and pull a knife on him. *Id.* The Court concluded that "the fifteen to thirty minute delay and the intervening activities, including Appellant's act of leaving the apartment, could rationally be interpreted as evidence that he was no longer fleeing from the theft." *Id.*

By contrast, McCracken's encounter with Bradley while leaving the Target was not similarly interrupted by some intervening event. Bradley saw McCracken walk out of the store with a cart full of unpurchased merchandise and followed him. When the cart's wheels locked just outside the storefront, McCracken kept pulling the cart. Without any intervening interruption, Bradley called out to McCracken. McCracken responded by yelling curses and threats and putting his hand on the bat. No evidence similar to that in *Sweed* suggests a break in events between McCracken's immediate flight and his threatening words and conduct toward Bradley. As a result, no theft instruction was warranted. *See Bullock*, 509 S.W.3d at 925; *Sweed*, 351 S.W.3d at 68–69. Accordingly, we overrule McCracken's first issue.

## Conclusion

We affirm the trial court's judgment.


Gordon Goodman
Justice

Panel consists of Justices Keyes, Kelly, and Goodman.

Do not publish. TEX. R. APP. P. 47.2(b).

17