Mike D. ULLOA, Appellant,

v.

The STATE of Texas, Appellee.

No. 58638.

Court of Criminal Appeals of Texas, Panel No. 2.

Sept. 20, 1978.

---

1. See Acts 1977, 65th Leg., p. 748, ch. 280, Sec. 1, eff. August 29, 1977.

Terrence W. McDonald, San Antonio, for appellant.

Before ONION, P. J., and PHILLIPS and TOM G. DAVIS, JJ.

## OPINION

ONION, Presiding Judge.

This is an appeal from a conviction for robbery, wherein the punishment was assessed by the court at three (3) years, probated.

In two grounds of error appellant challenges the sufficiency of the evidence to sustain the conviction, contending the proof did not meet the allegations of the indictment. Omitting the formal parts, the indictment alleged that the appellant on or about December 27, 1976 "did then and there while in the course of committing theft and with the intent to obtain property of Greg Baenziger, to wit: Two (2) shirts, without the effective consent of the said Greg Baenziger and with intent to deprive the said complainant, Greg Baenziger of said property did then and there intentionally and knowingly cause bodily injury to Greg Baenziger."

The record shows that the appellant and a woman described as his wife were in the Baenziger Model Market in New Braunfels about 3 p. m. on December 27, 1976. Greg Baenziger, manager of the market, observed them acting suspicious while at the shirt counter. He saw the appellant pick up some shirts and then put them down again when a customer would come around the corner. As Baenziger watched appellant picked up two shirts and walked to the next aisle and placed the shirts down in front of his pants and pulled his own shirt over the pants. Appellant then left the store and Baenziger followed him and stopped him in the store's parking lot and asked if he had forgotten to pay for something. Appellant stated Baenziger was crazy and threatened to call the cops. Baenziger asked him, however, to return to the store. As they reentered the store, appellant began to run and pulled the shirts out of his pants. At this time Baenziger grabbed the appellant's shoulder and the shirts fell or were thrown on the floor and appellant's woman companion picked them up and stuffed them behind a display of cat and dog food. A scuffle ensued with appellant throwing Baenziger into the meat case causing him to hit his head, bruising it. Appellant then swung at Baenziger several times and they ended up on the floor with Baenziger holding the appellant down. It was at this time that appellant bit Baenziger's right hand, which left a good-sized scar on the thumb. Baenziger also received some bruised ribs from the kicking he received from appellant's companion while he was wrestling with the appellant. Police were called and arrived after Baenziger allowed the appellant to get up. Baenziger stated he did not consent to appellant removing the shirts in question from the store.

Two employees of the store who did not see appellant take the shirts gave their version of the scuffle that ensued after both men reentered the store. The defense

called a woman customer who testified that she saw Baenziger hitting the appellant and saw him on the floor with Baenziger on top with the appellant complaining that Baenziger was choking him.

Testifying in his own behalf, the appellant admitted being in the store at the time in question and that he took the shirts. He related that when he and Baenziger returned to the store Baenziger grabbed him by the coat and told him to stop and then hit him in the ear; that when he saw another man approaching he began to run and threw the shirts away because he had stolen them. He stated while running he went down and Baenziger, who was pursuing, flipped over him into the meat case, but got up and started hitting him with his fists and that Baenziger got him down on the floor and in such a position he couldn't breathe, and that at this time he bit Baenziger.

V.T.C.A., Penal Code, § 29.01 (Definitions), provides:

"In this chapter:

"(1) 'In the course of committing theft' means conduct that occurs in an attempt to commit, during the commission, *or in immediate flight after* the attempt or *commission of theft.*

"(2) 'Property' means:

"(A) tangible or intangible personal property including anything severed from land; or

"(B) a document, including money, that represents or embodies anything of value." (Emphasis supplied.)

V.T.C.A., Penal Code, § 29.02 (Robbery), reads:

"(a) A person commits and offense if, in the course of committing theft as defined in Chapter 31 of this code and with intent to obtain or maintain control of the property, he:

"(1) intentionally, knowingly, or recklessly causes bodily injury to another; or

"(2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death.

"(b) An offense under this section is a felony of the second degree."

V.T.C.A., Penal Code, § 1.07(a)(7), provides:

"(7) 'Bodily injury' means physical pain, illness, or any impairment of physical condition." [1]

The Practice Commentary to said § 29.02 reads:

"Under prior law robbery consisted of an assault, violence, or causing fear of life or bodily injury for the purpose of completing a theft from the possession of another, Penal Code art. 1408. Section 29.02 restates the art. 1408 elements with some expansion. Robbery may be committed by causing bodily injury, even if it is only recklessly inflicted, Subsection (a)(1), or by knowingly or intentionally threatening or otherwise causing fear of bodily injury, Subsection (a)(2). As in prior law, the violence used or threatened must be for the purpose of compelling acquiescence to the theft or of preventing or overcoming resistance to the theft. Violence used or threatened for some purpose unrelated to the theft is a separate offense against the person, e. g., assault under Sections 22.01, 22.02.

"Section 29.02 is broader in scope than the prior robbery offense, however, because it applies to violence used or threatened, 'in the course of committing theft,' which is defined in Section 29.01 to include not only violent conduct antecedent to a completed theft, but also violence accompanying an unsuccessful attempted theft and violence accompanying an escape immediately subsequent to a completed or attempted theft. This factor adds two new methods of committing robbery. The first—use or threat of violence in an attempted theft—simply combines into the robbery offense the prior separate offense of assault with intent to rob, Penal Code art. 1163. The practical

1. See and cf. *Lewis v. State,* 530 S.W.2d 117 (Tex.Cr.App.1975).

effect is to provide an identical penalty range, which is justified because the conduct is equally dangerous whether or not the theft is completed and it is usually fortuitous that the theft falls short of completion. The second—use or threat of force in escaping—broadens the scope of robbery. Here, too, the conduct is as dangerous as force or threats antecedent to the theft. Thus the conduct in *Polk v. State* [157 Tex.Cr.R. 75], 246 S.W.2d 879 (Cr.App.1952), for example, would be robbery rather than simply theft from the person. The expansion is limited to assaults to effect an immediate escape so that a thief who uses force to resist apprehension a week after the theft does not commit robbery, but an assaultive-type offense.

"Unlike prior law, Section 29.02 does not limit robbery to the taking of property from 'the person or possession of another.' The requirement of an assault, Subsections (a)(1), (2), implies presence of the victim and thus limits the scope of this expansion, but it will apply, for example, when an offender threatens a victim 'in order to compel him to telephone directions for the disposition of property located elsewhere.'" Model Penal Code § 222.1, Comment at 70 (Tent. Draft No. 11, 1960).

■ In *Lightner v. State*, 535 S.W.2d 176 (Tex.Cr.App.1976), we noted the changes made in the definition of robbery by the 1974 Penal Code, and held that under the current statutes the offense of robbery includes any violence in the course of effectuating the theft as well as any violence while in immediate flight from the scene of the theft. In *Lightner*, an aggravated robbery case, the violence was antecedent to the theft and the injured party was a police officer and not the victim of the theft.[2] The conviction was affirmed. In *Brown v. State*, 535 S.W.2d 640 (Tex.Cr.App.1976),

the assault was made upon the victim of the theft outside the store after the theft had occurred in the store. There the court wrote:

"In the instant case, the conduct constituting an assault occurred 'in immediate flight after the attempt or commission of theft.' Hence, all the elements of the offense of robbery have been shown. *Lightner v. State*, Tex.Cr.App., 535 S.W.2d 176 (1976)."

■ Appellant argues that there is no evidence of flight in the case at bar but rather evidence of an attempt to replace the merchandise. We do not agree. The undisputed evidence reflects that appellant took the shirts in question and left the store. When stopped in the store's parking lot, he threatened to call the police but returned to the store. Appellant calls our attention to a conflict in the evidence as to whether he walked or ran back to the store. The conflict is immaterial as the undisputed evidence, including appellant's testimony, is that the appellant began to run once inside the store and that he dropped or threw away the shirts in his flight. He testified that he guessed his effort was to get rid of the evidence. Appellant's companion then tried to stuff the shirts behind the cat and dog food display. According to the State's witnesses, appellant continued to run, throwing Baenziger into the meat case and when forced to the floor he bit Baenziger's hand, causing the scar displayed during the bench trial. Thus, the violence occurred in flight from the scene of the theft.

As in *Brown*, we conclude that the conduct constituting an assault occurred in immediate flight after the attempt or commission of theft. The evidence does not support appellant's claim he was attempting to return the merchandise. We reject appellant's contention that because the assault occurred after he had abandoned or discarded the stolen property a different result

2. In a robbery prosecution it is not necessary that the victim of the theft or attempted theft and the victim of the robbery be the same.

*Servance v. State*, 537 S.W.2d 753 (Tex.Cr.App. 1976).

should be reached under the circumstances of this particular case.[3]

 Appellant further argues that even if the evidence is sufficient to sustain the robbery conviction there is nonetheless a fatal variance between the allegation of "intent to obtain property" and proof of "intent to maintain control of the property." Appellant contends the State in drafting the indictment alleged only the intent to "obtain control" over the property, and the undisputed proof showed he threw the property away inside the store. He advances the theory that to sustain the conviction this court must find that by throwing the property away he intended to obtain control of the property. The evidence clearly reflects that appellant intended to appropriate or obtain control of the shirts and in fact did so and only discarded the same in fear of apprehension. Appellant's contention is without merit.

The judgment is affirmed.

---

**3.** In *Lightner v. State,* supra, this court wrote:
". . . This new definition of robbery proscribes the use of violence not only in the taking of the property, but also in the immediate efforts of the thief to keep the stolen property."

Such holding was tailored to the facts of *Lightner* and was not a limitation upon a definition of robbery under the 1974 Penal Code.