

# NUMBER 13-05-513-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

ARMANDO VELA, Appellant,

v.

THE STATE OF TEXAS, Appellee.

## On appeal from the 319th District Court of Nueces County, Texas.

## MEMORANDUM OPINION

### Before Justices Rodriguez, Garza, and Wittig[1]
### Memorandum Opinion by Justice Wittig

Appellant, Armando Vela, was convicted of aggravated robbery by a jury. An enhancement was found to be true and punishment was assessed by the jury at thirty years in prison. We affirm the judgment of the trial court.

---

[1]Retired Fourteenth Court of Appeals Justice Don Wittig assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to the government code. TEX. GOV'T CODE ANN. § 74.003 (Vernon 2005).

In two issues, appellant challenges the legal and factual sufficiency of the evidence, and the denial of a challenge for cause. In the remaining three issues, he alleges ineffective assistance of counsel. Appellant gave timely notice of appeal. We address his issues in order.

## 1. Standard of Review

In reviewing legal sufficiency, we look at all of the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Vasquez v. State*, 67 S.W.3d 229, 236 (Tex. Crim. App. 2002). Legally sufficient evidence supporting a conviction exists if the court, after reviewing the evidence in the light most favorable to the prosecution, determines that a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 318-19 (1979).

Evidence may be factually insufficient if: (1) it is so weak as to be clearly wrong and manifestly unjust, or (2) the adverse finding is against the great weight and preponderance of the available evidence. *Roberts v. State,* 220 S.W.3d 521, 524 (Tex. Crim. App. 2007) (citing *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000)). The evidence, though legally sufficient, is factually insufficient if it is so weak that the jury's verdict seems clearly wrong and manifestly unjust, or if, considering conflicting evidence, the jury's verdict, though legally sufficient, is nevertheless against the great weight and preponderance of the evidence. *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006). A factual sufficiency review requires the reviewing court to consider all of the evidence. *Marshall v.*

2

*State*, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006). A clearly wrong and unjust verdict occurs where the jury's finding is manifestly unjust, shocks the conscience, or clearly demonstrates bias. *Sells v. State*, 121 S.W.3d 748, 754 (Tex. Crim. App. 2003). The Texas Court of Criminal Appeals in *Roberts* explained that a reversal for factual insufficiency cannot occur when "the greater weight and preponderance of the evidence actually favors conviction." *Roberts*, 220 S.W.3d at 524.

### 2. The Proof and Analysis

Appellant and his girlfriend, co-defendant Maria Garcia, entered a Kohl's Department Store. A security employee started surveillance with a store camera and caught appellant on tape taking a pair of tennis shoes from the shoe department and placing them on a shelf in a different aisle. Garcia then took the shoes and put them in her purse. The two then went to the athletic department where appellant picked out a pair of male athletic shorts and a black T-shirt. He handed them to Garcia who took the items off their hangers and put them into her purse. Garcia exited the store first and did not pay for the merchandise. When caught, Garcia offered to return the property. She was escorted back to the store. The in-store security tape was received into evidence without objection.

A security guard spotted appellant exiting the store and heading toward his vehicle. The vehicle was parked about ten spaces from the door. The guard held up his badge at face level and told appellant to come with him. Appellant pulled out a knife and headed toward the guard at a quick pace stating: "I don't have to go back with you. F— you." Appellant then advanced toward the guard from a distance of thirty feet to thirty yards to within four or five feet. The pocket knife was open and pointed toward the guard, who testified that he was scared. Another security guard stepped in and appellant then fled the

3

scene. Appellant was apprehended by police and brought back to the store within twenty minutes or less. The security guard's testimony was corroborated by witness Andrew Simpson.

Garcia testified that she was appellant's girlfriend. They had been together for more than a year and had lived together. Garcia told appellant she did not want to go into the store and steal that day. The couple had stolen property together on other occasions. Friends would "order" items to be stolen. The shoes appellant took were to fill such an order. When Garcia left the store she was surprised that she had lost appellant. She thought appellant perhaps stayed in the store to see if she had been caught. She did not see appellant walk toward Silva, pull a knife, or swear at Silva. Garcia did not deny that these things occurred, but rather, stated that she did not see them because she was scared and ran from the scene. Garcia testified that she felt like she was hung out to dry when she learned appellant told police he did not know her.

Appellant argues the evidence does not support a conviction because appellant "never maintained control of the property while exiting the store or outside of the store" sufficient to establish the intent necessary for aggravated robbery. In other words, appellant contends that he lacked the intent to maintain control of the property at the time of the assault to support a conviction of aggravated robbery. In any event, appellant contends that the confrontation in the parking lot was separate and apart from the theft in the store.

Section 29.01 of the Texas Penal Code provides:

(1) "In the course of committing theft" means conduct that occurs in an attempt to commit, during the commission, or in immediate flight after the attempt or commission of theft.

(2) "Property" means:

4

(A) tangible or intangible personal property including anything severed from land; or

(B) a document, including money, that represents or embodies anything of value.

TEX. PENAL CODE ANN. § 29.01 (Vernon 2003).

Section 29.02(a), governing "robbery," provides, in pertinent part, that :

A person commits an offense if, in the course of committing theft as defined in Chapter 31 of this code and with intent to obtain or maintain control of the property, he: (1) intentionally, knowingly, or recklessly causes bodily injury to another; or (2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death....

*Id.* § 29.02 (Vernon 2003). Section 29.03(a), governing aggravated robbery, provides, in pertinent part, that "[a] person commits an offense if he commits robbery as defined in Section 29.02 of this code, and he . . . uses or exhibits a deadly weapon." *Id.* § 29.03.

Both parties cite *White v. State*, 671 S.W.2d 40, 41 (Tex. Crim. App. 1984). *White* holds that the phrase "in the course of committing theft" includes conduct that occurs in an attempt to commit, during the commission, or in immediate flight after the attempt or commission of theft. *Id.* (citing TEX. PENAL CODE § 29.01). No completed theft is required in order for the proscribed conduct to constitute the offense of robbery under the penal code. *Id.* (citing *Robinson v. State*, 596 S.W.2d 130 (Tex. Crim. App. 1980); *Earl v. State*, 514 S.W.2d 273 (Tex. Crim. App. 1974)).

Appellant further cites *Lightner v. State*, 535 S.W.2d 176, 178 (Tex. Crim. App. 1976). In *Lightner*, the Texas Court of Criminal Appeals affirmed a robbery conviction where the facts showed that the defendant had assaulted a police officer in an attempt to avoid arrest immediately following the theft of money from an unattended cash register in

5

a store.  *See id.*  The defendant in that case argued that the evidence was insufficient to show robbery since the struggle with the police officer occurred after he had completed the theft.  *Id.*  The *Lightner* court held that:

> Under Sections 29.01 and 29.02, supra, the offense of robbery includes any violence in the course of effectuating the theft as well as any violence while in immediate flight from the scene of the theft. This new definition of robbery proscribes the use of violence not only in the taking of the property, but also in the immediate efforts of the thief to keep the stolen property . . . .

*Id.*

The element "intent to obtain or maintain control of the property" in section 29.02 "deals with the robber's state of mind regarding the property" involved in the theft or attempted theft, and not his state of mind in the assaultive component of the offense of aggravated robbery.  *Ex parte Santellana*, 606 S.W.2d 331, 333 (Tex. Crim. App. 1980). Therefore, violence or intentional threats or placing another in fear of imminent bodily injury accompanying an escape immediately subsequent to an attempted theft can constitute robbery under section 29.02.  *See Ulloa v. State*, 570 S.W.2d 954, 957 (Tex. Crim. App. 1978); TEX. PENAL CODE ANN. § 29.02, Practice Commentary; *see also Yarbrough v. State*, 656 S.W.2d 200, 201-02 (Tex. App.–Austin 1983, no pet.); *Banks v. State*, 638 S.W.2d 532, 535 (Tex. App.–Houston [1st Dist.] 1982, pet. ref'd.).

Appellant is further burdened with the fact that his co-defendant had already completed the theft and the jury charge included an instruction on the law of parties. Accordingly, the jury could convict appellant under the evidence if he acted with intent to promote or assist the commission of theft by encouraging, directing, aiding, or attempting to aid Garcia.  *See* TEX. PENAL CODE ANN. § 7.01 (Vernon 2003).  Both the video tape of the

6

theft and live testimony clearly demonstrate this.

The law does not require that appellant had the intent to maintain control over the property at the time the assault took place. *White*, 671 S.W.2d at 40-41. The evidence is thus sufficient to prove the aggravated element that appellant exhibited or used a deadly weapon. *See* TEX. PENAL CODE ANN. § 29.03.

We hold that there is legally and factually sufficient evidence to show that appellant committed the offense of aggravated robbery. *See Lightner*, 535 S.W.2d at 177-78; *see also* TEX. PENAL CODE ANN. § 29.03. Appellant's first issue is overruled.

### 3. Challenge for Cause

In his second issue, appellant complains the trial court abused its discretion in denying his challenge for cause of venireman Louis Garcia. Appellant claims Garcia was biased because he had a niece who was murdered. Her killer received only six months in jail and some years of probation. Because of this experience, Garcia said he may lean towards a heavier sentence if appellant were found guilty. "[I]f I find him guilty and he's found guilty by a unanimous decision, depending on everything that I've heard, I may lean towards a more heavier sentence." Further, Garcia stated that he would judge the accused's truthfulness with "extreme prejudice" if he found out that appellant had a prior conviction.

The venireman was challenged for cause and the trial count denied the motion. At that point, defense counsel stated: "Well, Your Honor, then I would ask the Court to allow me an extra challenge so that I can—because I'm going to strike this man, peremptory challenge. And I would like an extra challenge so that I can remove this man from the jury." The court denied the request.

7

Appellant argues on appeal that counsel would have used another peremptory challenge on the next venireman. The State argues, and we agree, that the record does not support this assertion.

In order to show harm from the erroneous denial of a challenge for cause, a defendant must demonstrate: (1) when a defendant exercises a peremptory challenge on a veniremember whom the trial court erroneously failed to excuse for cause at the defendant's request; (2) the defendant uses all of his statutorily allotted peremptory challenges; and (3) the defendant was denied a request for an additional peremptory challenge which he claims he would use on another veniremember whom the defendant identifies as "objectionable" and who actually sits on the jury. *Escamilla v. State*, 143 S.W.3d 814, 821 (Tex. Crim. App. 2004) (citing *Johnson* 43 S.W.3d at 5-6; *Wolfe v. State*, 147 Tex. Crim. 62, 178 S.W.2d 274, 280-81 (1944) (op. on reh'g)).

In *Wolfe*, also cited by appellant, the court similarly held that the accused need not show why such juror was objectionable to him. *Wolfe* 178 S.W.2d at 281. However, the same authority requires that "a further juror be presented whom he states to be objectionable to him..." *Id.* In *Moreno*, the court noted:

> We also observe there is no support for the assertion that an objectionable juror served on the jury. While Wolfe does not require that a defendant show grounds for a challenge for cause nor show why a particular juror was objectionable, a defendant must at least state that a particular juror or jurors are objectionable to him, after he has exercised peremptory challenges on other prospective jurors who were disqualified and where his challenges for cause on such jurors were overruled.

*Moreno v. State*, 587 S.W.2d 405, 408 (Tex. Crim. App. 1979); *see also Newbury v. State*, 135 S.W.3d 22, 30-31 (Tex. Crim. App. 2004).

8

Appellant correctly cites *Hernandez* as reaffirming the court's holding in *Wolfe. Hernandez v. State*, 563 S.W.2d 947, 948 (Tex. Crim. App. 1978). However, the *Hernandez* court observed: "Appellant notified the court that had he been granted an additional challenge, he would have struck venireman Gary Carroll as being an unacceptable juror. These facts place appellant squarely within the rule laid down in Wolfe v. State . . . ." Here, unlike in *Hernandez*, appellant did not specify which veniremember he found objectionable.

Because appellant has not shown harm arising out of the trial court's ruling, we need not address whether in fact the ruling was erroneous. This issue is overruled.

### 4. Ineffective Assistance of Counsel

By issues three, four, and five, appellant complains of ineffective assistance of counsel. An appellate court reviews a trial court's ruling on a motion for mistrial and motion for new trial using an abuse of discretion standard of review. *Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007) (citing *Wead v. State*, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004)). We view the evidence in the light most favorable to the trial court's ruling and uphold the trial court's ruling if it was within the zone of reasonable disagreement. *Id.* We do not substitute our judgment for that of the trial court, but rather we decide whether the trial court's decision was arbitrary or unreasonable. *Id.* A trial court abuses its discretion in denying a motion for new trial only when no reasonable view of the record could support the trial court's ruling. *Charles v. State*, 146 S.W.3d 204, 208 (Tex. Crim. App. 2004). We must view the evidence in the light most favorable to the trial court's ruling and presume that all reasonable factual findings that could have been made against the losing party were

9

made against that losing party. *Id.* Thus, a trial court abuses its discretion in denying a motion for new trial only when no reasonable view of the record could support the trial court's ruling. *Id.*

Review of an ineffective assistance of counsel claim is conducted under the standards enunciated in *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Hernandez v. State,* 988 S.W.2d 770, 770 (Tex. Crim. App. 1999). The first requirement under *Strickland* states: "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88. The second prong sets out the general requirement that the defendant affirmatively prove prejudice, *i.e.*, there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id.* at 694. When the record is silent as to defense counsel's rationale or strategy, appellant fails to overcome the presumption that trial counsel's decision was reasonable. *Rylander v. State*, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003); *Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999); *see Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005). Review of counsel's representation is highly deferential, and the reviewing court indulges a strong presumption that counsel's conduct fell within a wide range of reasonable representation. *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001); *Thompson*, 9 S.W.3d at 813-14; *Jackson v. State*, 973 S.W.2d 954, 957 (Tex. Crim. App. 1998); *see also Ex parte Duffy*, 607 S.W.2d 507, 513 (Tex. Crim. App. 1980). To overcome the presumption of reasonable professional assistance, "any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively

10

demonstrate the alleged ineffectiveness." *Thompson*, 9 S.W.2d at 813 (citing *McFarland v. State*, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996)).

### 5. Failure to Call Witness

In his third issue, Appellant contends trial defense counsel was ineffective because he failed to call a material witness. The witness, appellant's sister, Emma Vaca, testified at the hearing on the motion for new trial. She was at the Kohl's store during the time appellant and Garcia were arrested. She testified that she overheard one of the officers tell Garcia that he saw a bruise on her side and that all she had to do was tell the officer that appellant forced her to go there, and that appellant beat her, and the officer would "f... him up." Vaca was not contacted by defense counsel before trial and was stated to be available for trial testimony.

Unquestionably, counsel should interview available, beneficial defense witnesses. *Haynes v. State*, 790 S.W.2d 824, 827 (Tex. App.–Austin 1990, no pet.) (counsel did not interview available, beneficial defense witnesses and did not visit scene of offense). Counsel has the duty to make an independent investigation of the facts and circumstances of the case by seeking out and interviewing potential witnesses. *Ex parte Welborn*, 785 S.W.2d 391, 395-96 (Tex. Crim. App. 1990); *Ex parte Ybarra*, 629 S.W.2d 943, 946 (Tex. Crim. App. 1982); *Duffy*, 607 S.W.2d at 517; *Butler v. State*, 716 S.W.2d 48, 54 (Tex. Crim. App. 1986). Once counsel has investigated the facts and developed a defensive theory, counsel is obligated to present sufficient available evidence in support of that defensive theory. *See Duffy*, 607 S.W.2d at 518; *Butler*, 716 S.W.2d at 54-55; *Shelton v. State,* 841 S.W.2d 526, 527 (Tex. App.–Fort Worth 1992, no pet.). However, the burden is on the

defendant to show that purported witnesses were available and that their testimony would have been helpful to him. *King v. State*, 649 S.W.2d 42, 44 (Tex. Crim. App. 1983) (holding that failure to call a witness may support ineffective assistance of counsel claim only if it is shown witness was available and defendant would have benefitted from testimony); *see also Butler*, 716 S.W.2d at 55. Here, the witness was purportedly available but the question of benefit remains.

Appellant argues Vaca's testimony would have tended to disprove the credibility and truthfulness of the co-defendant Garcia's testimony. The obvious problem with this argument is that appellant's trial counsel was the one who called Garcia. Defense counsel should not be expected to impeach his own witness.

Defense counsel testified that appellant did not give him his sister's contact information. The family member could have been impeached with her lack of knowledge of appellant's criminal past. Even had defense counsel known of Vaca, he could well reason that her testimony would hurt and not help the defendant. Defense counsel specifically testified that he did not think Vaca's testimony would help appellant's case. Further, Vaca had a criminal record and was on probation for delivery and manufacture of cocaine and felony theft. We presume defense counsel provided reasonable professional assistance and that his actions might be considered sound trial strategy. *Jackson*, 877 S.W.2d at 771. We may also impute implicit factual findings that support the trial judge's ultimate ruling on that motion for new trial when such implicit factual findings are both reasonable and supported in the record. *Charles*, 146 S.W.3d at 206. Here, the record supports a finding that testimony by Vaca would not have been beneficial nor would have the result of the trial have been different had she testified. Thus, we hold that the trial court did not abuse its

12

discretion in overruling the motion for new trial on this basis.

## 6. Failure to Call Mitigation Witnesses

Appellant next challenges his counsel's effectiveness for failing to call witnesses to mitigate punishment. Mike Wanzer provided an affidavit which was admitted in the hearing on the motion for new trial. Wanzer's affidavit stated that he had known appellant in a working relationship for twenty years and that appellant was a trusted employee who was not prone to violence and not known to carry a knife. The affidavit also stated Wanzer was available and could have testified at the trial. Wazner did not appear live at the hearing.

Appellant's niece appeared and testified post-trial that she saw appellant every day, that he was a good man who worked hard and was never violent toward her or her family. She was aware of his prior convictions but not the family violence charges or evading arrest. She indicated defense counsel's office had contacted her, but through miscommunication, they never called her back.

Defense counsel testified that he talked with Wanzer, but did not think Wanzer's proposed testimony would have made an impact on the punishment. Counsel further testified that he had the impression that appellant had just started working with Wanzer and that Wanzer did not give him the impression that appellant had worked for him for years as indicated in the affidavit. Defense counsel also testified that it seemed that Wanzer didn't want to testify. Counsel called Wanzer two other times but Wanzer did not call back. Appellant points out that defense counsel initially called Wanzer "Bob Wanzer." Defense council then stated that "Wanzer" was the name he remembered. This confusion would likely have been cleared up with a live witness. Because only Wanzer's affidavit was used, the factfinder may also infer from a party's failure to call an available, competent, and

13

material witness, that the witness's testimony would be unfavorable. *Albiar v. State*, 739 S.W.2d 360, 363 (Tex. Crim. App. 1987); *Torres v. State*, 552 S.W.2d 821, 825 (Tex. Crim. App. 1977).

Defense counsel further testified that he had thirty years of legal experience. He worked in the District Attorney's office for almost eight years, and ninety percent of his practice during the last fifteen years had been in criminal law. He further opined his actions did not hurt appellant. According to counsel, his failure to call Wanzer as a witness was part of a sound trial strategy so that the prosecution could not ask a series of "did you know" type of questions. Defense counsel also stated that appellant would not give him any names of family members. Appellant told him: "I got into this myself, I'm going to get out of it myself."

The evidence at the motion for new trial hearing was contradictory. We review the trial court's denial of the motion by an abuse of discretion standard. *Biagas v. State*, 177 S.W.3d 161, 170. (Tex. App.–Houston [1st Dist.] 2005, pet. ref'd.). We may not substitute our judgment for that of the trial court; rather, we review whether the court's decision was arbitrary or unreasonable. *Charles*, 146 S.W.3d at 208. The fact finder is the exclusive judge of the credibility of witnesses and the weight to be afforded their testimony. *See Rodriguez v. State*, 191 S.W.3d 428, 437 (Tex. App.–Corpus Christi 2006, pet ref'd). The fact finder is free to accept one version of the facts, reject another, or reject all or any of a witness's testimony. *See id.* We presume that all reasonable factual findings that could have been made against the losing party, were made against him. *Charles*, 146 S.W.3d at 211. Viewing the evidence in the light most favorable to the ruling, we hold the trial court

14

did not abuse its discretion in overruling the motion for new trial on this basis. *See Salazar v. State,* 38 S.W.3d 141, 148 (Tex. Crim. App. 2001); *Charles*, 146 S.W.3d at 208.

### 7. Failure to File Discovery Request

In his final contention of ineffectiveness, appellant asserts that his trial counsel failed to request until the day before trial all the evidence that the State intended to produce under rule 404(b) of the Texas Rules of Evidence. TEX R. EVID. 404(b) (providing for admission of other crimes, wrongs or acts). The State did not produce a printed version of appellant's extraneous offences at the hearing; however, the prosecutor stated at the hearing that she intended to use evidence of family violence. Defense counsel was apparently not aware of the conviction for family violence and asked for a continuance. The continuance was denied, and the trial court ordered the State to turn over copies of the information and pen packets.

Appellant concludes that his trial attorney was thus unprepared for the punishment phase of the trial. In reply, the State replies that it has an open file policy, and the information sought was available to the defendant through the State's files and through public records.

It is true as appellant argues, that appellant's ability to review the State's file does not equate to the State's indication that it will introduce such evidence in its case-in-chief. *See Buchanan v. State*, 911 S.W.2d 11, 15 (Tex. Crim. App. 1995). Still, as appellant also admits, the mere failure to file an appropriate pretrial motion shall not be categorically deemed ineffective assistance of counsel. *Madden v. State*, 911 S.W.2d 236, 241 (Tex. App.–Waco 1995, pet. ref'd).

Defense counsel testified at the motion for new trial hearing that he did file a specific

15

discovery request for the surveillance tapes. The tape of the store's interior was produced without the necessity of a hearing. He was also provided access to the State's file, including appellant's history and extraneous offenses. Given the time constraints, he saw no need for a formal motion on the rule 404 matters. At the continuance hearing, defense counsel stated that the State had already told him about appellant's felony convictions, five burglaries, and one possession of a controlled substance plus "a whole lot of misdemeanors." The one thing counsel seemed to be unaware of was a family violence conviction pertaining to one of appellant's former girlfriends.

The State indicated they did not intend to use any of the prior convictions under rule 404(b). The prosecutor and defense counsel had previously conferred and the prosecutor stated that she had furnished all the rule 404(b) information. Defense counsel agreed, except for the family violence matter. The record indicates that the seeming disagreement in front of the judge was an apparent misunderstanding that the family violence would somehow be used under 404(b). The prosecutor stated she had no intent to use that matter under rule 404(b). Rather, the State intended to use this conviction in the punishment phase.

Defense counsel also stated he was attempting to try the case as soon as possible because appellant was in jail. Further, it is clear from the record that defense counsel thought he had been furnished all the information from the State's file and had no reason to suspect that the State was hiding any information. Thus, when he discovered he had not been told of the family violence conviction, he immediately moved for a continuance. He was then furnished this remaining bit of information in writing, even though it was not going to be used under rule 404(b).

The State argues that appellant has not shown that having some information earlier through some formal procedure would probably have caused a different outcome to the case. We agree. The record supports an implied finding by the trial judge that defense counsel had in fact already discovered the rule 404(b) evidence without the necessity of filing a formal motion. The only evidence of which he was unaware did not come under the purview of rule 404(b). *See* Tex R. Evid. 404(b). Thus, even a formal motion would not have necessarily have provided the information about the family violence conviction.

The record supports an implied finding that defense counsel used reasonable efforts to prepare for the punishment phase. Appellant failed to shoulder his burden to show both a deficient effort on the part of counsel and a reasonable probability of a different result. *Strickland*, 466 U.S. at 694. We accordingly hold that the trial court did not abuse its discretion by overruling the motion for new trial on this basis. We overrule issues three, four, and five.

## 8. Conclusion

The judgment of the trial court is affirmed.

DON WITTIG,
Justice

Do not publish. Tex. R. App. P. 47.2(b).

Memorandum Opinion delivered and filed
this the 30th day of May, 2008.