# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-16-00198-CR

**Kimberly Charlene Martin, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF COMAL COUNTY, 207TH JUDICIAL DISTRICT
### NO. CR2013-406, HONORABLE R. BRUCE BOYER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Kimberly Charlene Martin of one count of the offense of theft and two counts of the offense of robbery.[1] The district court rendered judgment on each verdict and sentenced Martin to two years' confinement in state jail for the theft offense and fifteen years' imprisonment for each count of the robbery offense, with the sentences to run concurrently. In a single issue on appeal, Martin asserts that the evidence is insufficient to support her two robbery convictions. We will affirm the judgments of conviction.

## BACKGROUND

The jury heard evidence that on June 17, 2010, Paul Savadin, an employee at a Hobby Lobby store in New Braunfels, observed a woman in the store, later identified as Martin, "taking a

---

[1] *See* Tex. Penal Code §§ 29.02(a), 31.03(e)(4)(D).

lot of jewelry packets" from the store shelves. Savadin testified that Martin was walking through the store without a purse, bag, or shopping cart, which aroused his suspicions, so he decided to follow her. According to Savadin, after Martin had walked into the gardening section of the store, she "looked around real quick" and then "started stuffing everything she had in her hands in her pockets and inside her front pants, behind—in the back of her pants, inside her shirt, bra, everything." Savadin then notified the store manager, Robert Tilghman, of Martin's actions, and Tilghman proceeded to intercept Martin after she had walked out the front door.

Tilghman testified that he informed Martin that she had been observed placing items in her clothing and asked her to return inside. According to Tilghman, Martin "continued to go. Then she started to run. And I reached out and grabbed the back of her T-shirt." An altercation outside the store between Tilghman and Martin ensued, during which Savadin ran outside and assisted Tilghman in attempting to detain Martin. Tilghman recounted:

> And Paul got behind her, and I was in front of her. We start trying to detain her, and we got her towards the wall. Then she had yelled at—you know, she has AIDS. And Paul repositioned himself behind her, and I also got behind her. I got towards her shoulders, and Paul ended up going towards her legs.

Meanwhile, Tilghman recounted, Martin was "swinging and kicking." Savadin similarly testified that Martin was "[k]icking a lot." Savadin added, "She's just basically, you know, punching; not directly at us, but just trying to get away. So we're trying to, you know, hold her." Eventually, Savadin recounted, they "got her to the ground" in a "sitting position" and, as Martin continued to struggle, Tilghman was able to call 911. A copy of the recording of the call was admitted into evidence, and during the call, Martin can be heard yelling and screaming at the men to release her

2

and Tilghman can be heard informing the dispatcher that Martin was trying to bite them and saying that she had AIDS.

Tilghman further testified that when Martin stated that she had AIDS, this made him "worried" and "scared" of "contracting AIDS [and] dying." Savadin similarly testified that Martin's "comment about AIDS" was "scary" and made him "worried" and afraid that he could contract the disease if Martin were to "spit in [his] face." In response to this fear, Savadin recounted, he "went ahead and moved down to hold her ankles, try[ing] to get away from her farther but still try[ing] to help [Tilghman], you know, hold her down." When Savadin was later asked if he had been "concerned in any way that [Martin] may kick or punch" him as he was holding onto her, Savadin testified, "No, sir. Biting, maybe, but not kicking or punching." Additionally, in a video-recorded statement that Savadin gave to the police following Martin's arrest, a copy of which was admitted into evidence, Savadin explained that, following Martin's claim that she had AIDS, he had repositioned himself near her legs "so she couldn't bite me."

Shortly after Tilghman had called 911, police officers arrived at the store and arrested Martin. Detective Clint Penniman of the New Braunfels Police Department testified that when he arrived at the store, he observed Tilghman and Savadin "holding down" Martin on the ground, while Martin "was still, at the time, struggling with" the men.

Based on the above and other evidence, which we discuss in more detail below, the jury found Martin guilty of committing one count of theft and two counts of robbery (one count committed against Tilghman and the other count committed against Savadin). The district court rendered judgment on the verdicts and sentenced Martin as noted above. This appeal followed.

3

## STANDARD OF REVIEW

When reviewing the sufficiency of the evidence supporting a conviction, "the standard of review we apply is 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"[2] "This standard tasks the factfinder with resolving conflicts in the testimony, weighing the evidence, and drawing reasonable inferences from basic facts."[3] "[A]n inference is a conclusion reached by considering other facts and deducing a logical consequence from them."[4] "On appeal, reviewing courts 'determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict.'"[5] "Thus, '[a]ppellate courts are not permitted to use a 'divide and conquer' strategy for evaluating sufficiency of the evidence' because that approach does not consider the cumulative force of all the evidence."[6] "When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict, and we defer to that determination."[7] Moreover, "[o]ur review of 'all of the evidence' includes evidence that was properly and improperly

---

[2] *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

[3] *Id*.

[4] *Hooper v. State*, 214 S.W.3d 9, 16 (Tex. Crim. App. 2007).

[5] *Murray*, 457 S.W.3d at 448 (quoting *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)).

[6] *Id*. (quoting *Hacker v. State*, 389 S.W.3d 860, 873 (Tex. Crim. App. 2013)).

[7] *Id*. at 448-49 (citing *Hooper*, 214 S.W.3d at 12).

admitted."[8] Finally, "the same standard of review is used for both circumstantial and direct evidence cases."[9] "Circumstantial evidence is as probative as direct evidence in establishing guilt, and circumstantial evidence alone can be sufficient" to support a conviction.[10]

## ANALYSIS

In her sole issue on appeal, Martin asserts that the evidence is insufficient to prove that she committed each of the two robbery offenses.[11] A person commits the offense of robbery if, in the course of committing theft, she (1) intentionally, knowingly, or recklessly causes bodily injury to another or (2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death.[12]

### Count I – Tilghman

Count I of the indictment alleged that Martin robbed Tilghman by either: (1) causing him bodily injury or (2) threatening or placing him in fear of imminent bodily injury or death. Martin asserts that there is insufficient evidence to support either theory. We will first address whether there is sufficient evidence to prove that Martin caused Tilghman bodily injury.

---

[8] *Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016) (citing *Clayton*, 235 S.W.3d at 778).

[9] *Id*. (citing *Hooper*, 214 S.W.3d at 13).

[10] *Id*. (citing *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004)).

[11] Martin does not challenge the sufficiency of the evidence supporting her conviction for the offense of theft.

[12] Tex. Penal Code § 29.02(a)(1), (2).

"The Texas Penal Code broadly defines 'bodily injury' as 'physical pain, illness, or any impairment of physical condition.'"[13] "This definition appears to be purposefully broad and seems to encompass even relatively minor physical contacts so long as they constitute more than mere offensive touching."[14] "In fact, the degree of injury sustained by a victim and the 'type of violence' utilized by an accused appear to be of no moment."[15] "Any physical pain, however minor, will suffice to establish bodily injury."[16] Moreover, bodily injury may be proven even in the absence of testimony from the victim that he felt pain.[17] "A fact finder may infer that a victim actually felt or suffered physical pain because people of common intelligence understand pain and some of the natural causes of it."[18] When, as here, the alleged offense is robbery, "so long as the 'violence' is clearly perpetrated against another 'for the purpose of . . . preventing or overcoming resistance to theft,' it does not serve the legislative intent to engage in fine distinctions as to degree or character of the physical force exerted."[19] Moreover, it is well established that "the offense of robbery includes

---

[13] *Garcia v. State*, 367 S.W.3d 683, 688 (Tex. Crim. App. 2012) (quoting Tex. Penal Code § 1.07(a)(8)).

[14] *Lane v. State*, 763 S.W.2d 785, 786 (Tex. Crim. App. 1989).

[15] *Id*.

[16] *Garcia*, 367 S.W.3d at 688 (citing *Laster v. State*, 275 S.W.3d 512, 524 (Tex. Crim. App. 2009)).

[17] *See Shah v. State*, 403 S.W.3d 29, 35 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd); *Arzaga v. State*, 86 S.W.3d 767, 778 (Tex. App.—El Paso 2002, no pet.).

[18] *Garcia*, 367 S.W.3d at 688 (citing *Randolph v. State*, 152 S.W.3d 764, 774 (Tex. App.—Dallas 2004, no pet.)).

[19] *Id*. at 787.

any violence in the course of effectuating the theft as well as any violence while in immediate flight from the scene of the theft."[20]

In this case, Tilghman provided testimony from which the jury could have reasonably inferred that Martin, during her physical struggle with Tilghman and Savadin as she was attempting to flee the store, had made physical contact with Tilghman that constituted "more than mere offensive touching." On direct examination, Tilghman testified as follows:

Q. Okay. So you began—you get a hold of her. Y'all begin wrestling around. Is she—what is she doing?

A. She's swinging and kicking.

Q. Okay. Who is she swinging and kicking at?

A. At myself.

Q. Okay. Did she ever make contact with you?

A. I believe she did, sir. I don't recall a lot—there was just a lot going on at the time, a lot of adrenaline running and stuff like that.

Martin elicited the following additional testimony from Tilghman on cross-examination:

Q. Okay. Now, she never—Mrs. Martin never bit you?

---

[20] *White v. State*, 671 S.W.2d 40, 42-43 (Tex. Crim. App. 1984); *Ulloa v. State*, 570 S.W.2d 954, 957 (Tex. Crim. App. 1978); *Brown v. State*, 535 S.W.2d 640, 641-42 (Tex. Crim. App.1976); *Lightner v. State*, 535 S.W.2d 176, 177-78 (Tex. Crim. App. 1976); *see* Tex. Penal Code 29.01(1) ("'In the course of committing theft' means conduct that occurs in an attempt to commit, during the commission, or in immediate flight after the attempt or commission of theft."); *see also Lawton v. State*, 913 S.W.2d 542, 552 (Tex. Crim. App. 1995) ("There is no requirement that appellant retain the intent to control property when the assaultive act is committed; the required violence may occur after the offender has abandoned the theft and is escaping.").

7

A.     No, sir.

Q.     She didn't—she didn't punch you in the face?

A.     No, not in the face, sir.

Q.     So you said she punched you then?

A.     She had swung at me, sir, and I believe she hit me.  I—like I said on the recording also, I don't actually recall.  The adrenaline was going, everything else.  I know she had kicked at me.  I know that for a fact.  But she had swung at me.  I don't recall if she actually made contact with a punch or not.

Q.     Okay.  And when you say she kicked at you, did she actually kick you?

A.     I couldn't actually tell, sir.  I mean, once again, we were struggling.  If it—during the kick, it was actually—you know, when she was kicking, if she actually made contact or not, I couldn't swear to that, sir.

Martin asserts that the above testimony is equivocal as to whether Martin made contact with Tilghman and is thus insufficient to establish that Tilghman suffered bodily injury.

However, in addition to Tilghman's testimony, the jury also heard an audio recording of a statement that Tilghman had provided to the police following the incident.  In that statement, Tilghman described the struggle with Martin in greater detail:

Officer:     [W]here did she kick you?

Tilghman:     Honestly, she just kicked at my legs.  I don't remember anything else really, everything else happened very quickly, [inaudible] trying to get away more than anything else.

Officer:     When she did kick you, did you feel pain?

Tilghman:     I guess so, but I mean the adrenaline was going so I don't really, you know, it happened quick, I didn't pay that much attention, it was more just trying to detain her.

8

| Officer: | When she kicked you, you felt it but didn't really worry about it because you were more focused on detaining her? |
|---|---|
| Tilghman: | That's correct. |
| Officer: | And during the rest of the struggle, did she hit you in any way or kick you in any other way where you did feel pain? |
| Tilghman: | She swung at me a couple of times and hit me but I mean … yeah … I guess it was some pain but I mean, like I said, once again … you just keep on going through. |
| Officer: | Okay, so you felt pain but it wasn't enough to force you to stop from detaining her or anything like that? |
| Tilghman: | Correct. |

Thus, on the recording, the jury heard the following additional evidence tending to show that Martin had caused Tilghman physical pain:

- Tilghman told the officer that Martin had "swung at [him] a couple of times and hit [him]" and that this caused him "some pain."

- When the officer asked Tilghman to clarify whether he "felt pain," but "it wasn't enough to force [him] to stop [] detaining [Martin] or anything like that," Tilghman answered, "Correct."

- Tilghman told the officer that Martin had "kicked at [his] legs" and that he "guess[ed]" that this also caused him pain but, because "the adrenaline was going" and "it happened quick," he "didn't pay that much attention" to the pain.

- When the officer asked Tilghman if, "[w]hen she kicked [him]," Tilghman "felt it" but "didn't really worry about it because [he was] more focused on detaining her," Tilghman answered, "Correct."

From this and other evidence, including Tilghman's testimony summarized above, the jury could have reasonably inferred that Martin had in fact struck Tilghman when she was "swinging and

9

kicking" at him while he was attempting to detain her and that this contact had caused Tilghman at least some level of physical pain. The jury could have further inferred that Tilghman's difficulty at trial in remembering the details of the struggle was because of the passage of time or some other reason, such as the "adrenaline" that Tilghman testified he had experienced during the struggle. The jury was free to reject Martin's contrary theory that Martin had not struck or kicked Tilghman during the struggle. On this record, we conclude that the combined and cumulative force of the evidence and all reasonable inferences therefrom, when viewed in the light most favorable to the verdict, is sufficient to support the jury's finding that Martin caused Tilghman bodily injury, i.e., physical pain, as alleged in count I of the indictment.[21]

Moreover, even if the evidence is insufficient to prove that Martin caused Tilghman bodily injury, the evidence is nevertheless sufficient to prove the State's alternative theory of

---

[21] *See Lane*, 763 S.W.2d at 786 (evidence sufficient to prove bodily injury when victim testified "that she suffered physical pain to her wrist resulting from the struggle with appellant over her wallet," even though victim "was neither struck nor pushed down by appellant in his attempt to obtain her wallet and appellant in fact never touched her wrists"); *Allen v. State*, 533 S.W.2d 352, 353-54 (Tex. Crim. App. 1976) (evidence sufficient to prove bodily injury when officer testified that defendant kicked him in the nose and that this caused him pain); *Wawrykow v. State*, 866 S.W.2d 96, 100 (Tex. App.—Beaumont 1993, no pet.) (evidence sufficient to prove bodily injury even though victim did not testify to feeling pain when jury could infer that victim felt pain during altercation based on witnesses' description of defendant's "violently abusive" behavior in hitting victim); *see also Tennison v. State*, No. 02-13-00297-CR, 2014 Tex. App. LEXIS 3944 (Tex. App.—Fort Worth Apr. 10, 2014, pet. ref'd) (mem. op., not designated for publication) (evidence sufficient to prove bodily injury when victim testified that defendant swung at him and delivered "glancing blow" to victim's face that "hurt" even though victim was "able to duck" out of the way); *Harrison v. State*, No. 10-03-00333-CR, 2004 Tex. App. LEXIS 9061, at *1 (Tex. App.—Waco Oct. 13, 2004, pet. ref'd) (mem. op., not designated for publication) (evidence sufficient to prove bodily injury when victim testified that it "hurt" when defendant kicked his leg).

culpability—that Martin, by her words or conduct, threatened or placed Tilghman in fear of imminent bodily injury or death.[22]

"A conviction for robbery under section 29.02(a)(2) requires proof of actual or threatened violence to the victim, or intimidation of such a nature that the victim was put in fear."[23] "The plain language of the statute encompasses not just explicit threats, but whatever implicit threats may lead to the victim being placed in fear."[24] "The fear must be of such nature as in reason and common experience is likely to induce a person to part with his property against his will."[25] "The fear must arise from the conduct of the accused, however, rather than the mere temperamental timidity of the victim."[26] Moreover, the fear must be of "imminent" bodily injury or death.[27] Although the Penal Code does not define "imminent," the Court of Criminal Appeals has defined that term to mean "ready to take place, near at hand, impending, hanging threateningly over one's

---

[22] *See* Tex. Penal Code § 29.02(a)(2).

[23] *Welch v. State*, 880 S.W.2d 225, 226 (Tex. App.—Austin 1994, no pet.) (citing *Green v. State*, 567 S.W.2d 211, 213 (Tex. Crim. App. 1978); *Wilmeth v. State*, 808 S.W.2d 703, 705 (Tex. App.—Tyler 1991, no pet.)); *see Howard v. State*, 333 S.W.3d 137, 138-39 (Tex. Crim. App. 2011); *Devine v. State*, 786 S.W.2d 268, 269-70 (Tex. Crim. App. 1989); *Jones v. State*, 467 S.W.2d 453, 454 (Tex. Crim. App. 1971); *Cranford v. State*, 377 S.W.2d 957, 958 (Tex. Crim. App. 1964).

[24] *Howard*, 333 S.W.3d at 138.

[25] *Devine*, 786 S.W.2d at 270; *Jones*, 467 S.W.2d at 454; *Welch*, 880 S.W.2d at 226.

[26] *Cranford*, 377 S.W.2d at 959; *Houston-Randle v. State*, 499 S.W.3d 912, 915 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd).

[27] *See Devine*, 786 S.W.2d at 270.

head, menacingly near."[28]  Thus, threats of "future harm only" are insufficient to support a robbery conviction.[29]

In this case, Martin asserts that her statement, "I have AIDS," did not threaten or place Tilghman in fear of "any immediate danger" of bodily injury or death.  However, based on the circumstances in which the statement was made, the jury could have reasonably inferred otherwise. Tilghman and Savadin both testified that Martin had told them that she had AIDS as they were engaged in a protracted, physical struggle with Martin to prevent her from escaping the store. According to Tilghman, at one point during the struggle, they were "wrestling on the ground" with Martin, and the jury could have reasonably inferred from this and other evidence (including the 911 call in which Martin can be heard yelling and screaming in the background) that Martin was behaving in a violent manner as the men were holding onto her.  This violent behavior, the jury could have further inferred, included not only Martin "swinging and kicking" at the men but also, according to Tilghman's statement to the dispatcher during the 911 call, attempting to bite them. Tilghman testified that as a result of Martin's words and conduct, he was afraid of contracting AIDS:

Q.  Okay. Now, when she told you that she had AIDS, how did that make you feel?

A.  Worried. Scared.

Q.  Why did it scare you and make you worry?

---

[28]  *Garcia*, 367 S.W.3d at 689; *Devine*, 786 S.W.2d at 270.

[29]  *See Devine*, 786 S.W.2d at 270-71 (concluding that defendant's threat to kill victim at unspecified future date was insufficient to support robbery conviction when record was "devoid of any evidence" that defendant had threatened victim with "imminent" harm).

A.      Fear of getting—you know, contracting AIDS, dying.

Q.      Okay.  Do you know what AIDS is?

A.      I do.

Q.      What is it?

A.      It's an immune deficiency virus.

Q.      Okay.  And I guess is there anything in your life that makes this particularly, I guess, scary to you?

A.      Well, I had a roommate while I was in the service who died of AIDS.

Q.      Okay.  So you knew this to be a disease that could kill you?

A.      Yes.

Q.      Okay.  Now, once again, when she said this to you, were you in fear of contracting this disease?

A.      Of course, yes.

Tilghman also testified that when Martin told him that she had AIDS, he "moved to the back of her and put her in a sitting position."  The jury could have reasonably inferred from this testimony that Tilghman had repositioned himself behind Martin because he was afraid that she might bite him if he had remained in front of her.

The definition of "bodily injury" includes both "physical pain" and "illness."[30]  Thus, the jury could have reasonably inferred from the above and other evidence that Martin, by stating that she had AIDS and attempting to bite the men while they were holding onto her, had through her

---

[30]  *See* Tex. Penal Code § 1.07(a)(8).

13

words or conduct threatened or placed Tilghman in fear of imminent bodily injury—i.e., either the physical pain that would accompany being bit or the possibility of contracting AIDS as a result—and that this fear was reasonable under the circumstances.[31]   On this record, we conclude that the

---

[31]  *See Ulloa*, 570 S.W.2d at 957 (evidence sufficient to prove robbery when defendant bit store manager's hand as manager attempted to prevent defendant's escape from store following shoplifting incident); *Colbert v. State*, No. 05-94-00106-CR, 1995 Tex. App. LEXIS 4018, at *2, *6-7 (Tex. App.—Dallas Mar. 27, 1995, no pet.) (per curiam) (evidence sufficient to prove that defendant threatened victim with imminent bodily injury following shoplifting incident when defendant, during struggle with security guard, "tried to bite him on the arm"); *Lister v. State*, 894 S.W.2d 771, 774 (Tex. App.—Tyler 1994, pet. ref'd) (evidence sufficient to prove that defendant threatened peace officer with imminent bodily injury when defendant attempted to bite officer); *see also Hayden v. State*, 155 S.W.3d 640, 643 (Tex. App.—Eastland 2005, pet. ref'd) (concluding that defendant's "appearance, words, and [threatening] gesture," when considered in their totality, were sufficient to place reasonable person in victim's circumstances in fear of imminent bodily injury); *Pitte v. State*, 102 S.W.3d 786, 793 (Tex. App.—Fort Worth 2003, no pet.) (concluding that defendant's threat, "Bitch, you'd better move or I'll knock you out," in conjunction with defendant's close proximity to victim and other circumstances, were sufficient to place victim in fear of imminent bodily injury); *Welch*, 880 S.W.2d at 227 (concluding that defendant's "generally aggressive manner" when demanding money from victim was sufficient to place reasonable person in victim's circumstances in fear of imminent bodily injury; observing that "it is not necessary that the alleged robber display a weapon or make an express threat in order to support a finding that the victim was threatened or placed in fear"); *Wilmeth*, 808 S.W.2d at 705-06 (concluding that evidence of defendant's "menacing glance and clenched fists," even in absence of verbal threat of harm, were sufficient to place victim in fear of imminent bodily injury, "given the appropriate surrounding circumstances"). *Cf. Mathonican v. State*, 194 S.W.3d 59, 69-70 (Tex. App.—Texarkana 2006, no pet.) (collecting cases from other jurisdictions and taking judicial notice that AIDS is life-threatening disease, that contracting HIV constitutes "serious physical injury" and that AIDS and HIV are transmitted by blood, semen, and other bodily fluids); *Weeks v. State*, 834 S.W.2d 559, 565 (Tex. App.—Eastland 1992, pet. ref'd) (evidence sufficient to support defendant's conviction for attempted murder when HIV-positive defendant spit on prison guard and jury "chose to believe the witnesses who testified that HIV could be transmitted through saliva"); *cf. also Campbell v. State*, No. 05-08-00736-CR, 2009 Tex. App. LEXIS 5369, at *6-8 (Tex. App.—Dallas Jul. 14, 2009, pet. ref'd) (op., not designated for publication) (defendant spit on victim; evidence sufficient to prove that defendant's HIV-positive saliva was deadly weapon even though evidence indicated that risk of HIV transmission through saliva was small); *Degrate v. State*, No. 05-04-00218-CR, 2005 Tex. App. LEXIS 547, at *4-8 (Tex. App.—Dallas Jan. 26, 2005, no pet.) (mem. op., not designated for publication) (evidence sufficient to prove that HIV-positive defendant's mouth was deadly weapon when defendant bit complainant through trousers, drawing blood).

combined and cumulative force of the evidence and all reasonable inferences therefrom, when viewed in the light most favorable to the verdict, is sufficient to prove that Martin threatened or placed Tilghman in fear of imminent bodily injury as alleged in count I of the indictment.

**Count II – Savadin**

Martin next asserts that the evidence is insufficient to prove the allegations in count II of the indictment. Count II alleged that Martin, by her words or conduct, threatened or placed Savadin in fear of imminent bodily injury or death.[32]

The relevant inquiry is again whether Martin's statement that she had AIDS threatened or placed Savadin in fear of imminent bodily injury or death. On this record, we conclude that the jury could have reasonably inferred that it did. In addition to the evidence summarized above, which tended to show that Martin had behaved violently during the struggle with both men and that this behavior included attempting to bite them, the jury also heard evidence tending to show that Savadin was afraid of being spit on or bit by Martin as a result of her words and conduct. In his statement to the police, Savadin explained that he had repositioned himself away from Martin's wrists and near her legs "so she couldn't bite me." Savadin also testified that as a result of Martin's words and actions, he was afraid of contracting AIDS from her:

> Q.    Okay. Now, when she told you she had AIDS, how did that make you feel?
>
> A.    Pretty grossed out and worried so that she could spit on me, because I saw that Bob had her arms. So—so that's why I moved down to hold her legs, her ankles, try to get away from her but still, you know, hold on to her.

---

[32] *See* Tex. Penal Code § 29.02(a)(2).

15

Q.   Did it concern you?

A.   Yes, sir.

Q.   Okay.  Did it place you in fear?

A.   Yes, sir.

Q.   And what did it place you in fear of?

A.   Of—if I could get, you know, spit in the face and if I can contract, you know, something or anything else that, you know, she could have.

Q.   Okay.  What do you know of—what is—what do you know of AIDS to be in your mind?  When she said that, what did—what did you think that was?

A.   Best I know of, it is contractual [sic] by bodily fluids.  So if, you know, somebody is spitting at you—that's what put me at fear, that if it—you know, spit in my face, got in my eyes or anything like that, that could, you know, harm me.

Q.   What did you understand AIDS to be?

A.   A contracted disease that, you know, you may potentially end up dying from, eventually.

Q.   Okay.  And so I guess the ultimate question is, did you feel—were you placed in fear that you may, I guess, contract that—that disease?

A.   Yes, sir.  Yes, sir.

Q.   And that was done so by her actions and words?

A.   Yeah.  Yes, sir.

We conclude that the combined and cumulative force of the above evidence and all reasonable inferences therefrom, when viewed in the light most favorable to the verdict, is sufficient

16

to prove that Martin, by her words and conduct, had threatened or placed Savadin in fear of imminent bodily injury as alleged in count II of the indictment.

We overrule Martin's sole issue on appeal.

## CONCLUSION

We affirm the judgments of conviction.

_____
Bob Pemberton, Justice

Before Chief Justice Rose, Justices Pemberton and Goodwin

Affirmed

Filed:   December 1, 2017

Do Not Publish

17